TALBOTT ET AL., respondents, *v.* KING ET AL., appellants.

MINING LOCATION — *Patent* — *Unauthorized exception.* — A mining location, under the United States statutes, gives the person making the same the right to the exclusive possession and enjoyment of all the surface ground included within the lines of his location, and an exception in a patent based upon such location of such surface ground is unauthorized and void.

SAME — *Limitation on use of location.* — The act of congress of March 3, 1865 (U. S. R. S. sec. 2386), does not limit the title of the locator of a mining claim under the act of May 10, 1872 (U. S. R. S. sec. 2319), to the necessary use of the ground located for mining purposes.

SAME — *Occupation for town site.* — The occupation of mineral lands as and for the purposes of a town lot is of no effect as against a valid mining-claim location, and no rights or equities flow therefrom.

FINDINGS OF THE LAND DEPARTMENT of the United States government, within the scope of its jurisdiction, are final.

TOWN SITE — *Conflict with prior mineral location.* — One claiming under a subsequent town site patent cannot defeat the right of a patentee, claiming under a prior mining patent to the possession of the surface ground included therein, by showing a mere occupancy previous to the location of the mining claim. Nor can he show that such mining location on which the patent was based was void, by reason of the failure of the locator to comply with the requirements of the statute then in force as to marking the boundaries.

PATENT TO A MINING CLAIM IS CONCLUSIVE PROOF of a discovery and location according to law. Such patent takes effect by relation as of the date of the location.

TOWN SITE PATENT CANNOT OPERATE so as to cut off the rights of a prior locator of a mining claim.

*Appeals from Second District, Silver Bow County.*

THE opinion states the facts.

KNOWLES & FORBIS, for the appellant.

This is an action instituted by plaintiffs in the nature of an action in ejectment. The plaintiffs claim title to the premises in dispute as a part of the Smoke-house lode claim. The defendants dispute the title of plaintiffs and claim title in the disputed premises as part of the Butte town site.

A patent was issued to plaintiffs to the Smoke-house lode on March 15, 1881.

A patent was issued to O. B. O'Bannon in trust to the Butte town site, September 26, 1877.

The questions presented involve, among others, the construction of the town site act under which the Butte town site was patented to O'Bannon.

Courts in construing a statute may, with propriety, recur to the history of the times when it was passed. *United States* v. *U. P. R. R. Co.* 91 U. S. 79.

The law of congress upon mines was intended only to confirm what had existed before, in regard to mining for the precious metals, and not to establish a new system. *Jennison* v. *Kirk*, 98 U. S. 459.

It had always been an established practice before the mineral act of 1866 to build houses and towns upon what proved to be mineral lands, and the courts protected the owners of houses and improved lots in such towns against miners. *Fitzgerald* v. *Urton et al.* 5 Cal. 308–9; *Burge* v. *Underwood*, 6 Cal. 45; *Smith* v. *Doe et al.* 15 Cal. 301; *Gellean* v. *Hutchinson*, 16 Cal. 154.

The statute of 1865, Revised Statutes United States, sec-

tion 2385, certainly recognizes the fact that there would be town sites in mineral regions, and provided that the town lots acquired should be subject to the necessary use of mining claims where the mineral veins were possessed in accordance with the local authority.

Under this statute, certainly there is no doubt but that the title to a town lot acquired was perfect if it was not upon a mineral vein possessed in accordance with local authority. Then it was subject to the necessary use of the same, and only this necessary use. *Courchaine* v. *Bullion Mining Co.* 4 Nev. 369.

The statute upon town sites, from section 2380 to 2387, Revised Statutes of United States, must be treated as one law, and it is difficult to comprehend how there can be a construction of it which would prevent the taking up of mineral lands as a town site thereunder.

In March 2, 1867, Revised Statutes of United States, section 2387, there was an additional statute upon the subject of town sites. The language of that statute is: "Whenever any portion of the public lands has been or may be settled upon and occupied as a town site not subject to entry under the agricultural pre-emption laws, it is lawful," etc.

Now the language is here very general, "*any portion of the public lands.*" The only limit is, not subject to entry under the agricultural pre-emption laws. Mineral lands are not so subject to such entry, nor are town sites.

In the land department of the general government it has been the general rule to construe these statutes together, the mineral and town site acts, and to hold that one modifies the other; and in issuing patents this view has been acted upon, and patents to town sites have been issued for lands in mineral regions. Copp's United States Mineral Lands, 281.

Usage under a statute is of great value in construing it. Sedgwick on Stat. and Const. Law, 215.

Where a statute has received a construction by continued usage and practice at the proper department of the gov-

ernment it must be a strong and palpable case of error and
injustice to justify a change in the interpretation given to
it.     2 Opp. Att'y Gen. 558; 10 id. 52; Nat. Dig. 4 vol.
227, sec. 64; *Edwards' Lessees* v. *Darby*, 12 Wheat. 206;
*Smythe* v. *Fisk*, 23 Wall. 382; *United States* v. *Moore*, 95
U. S. 763; *Brown* v. *United States*, 113 U. S. 571.

The officers of the United States general land office have
construed the town site act and the mineral acts *in pari
materia*, and have issued patents for town sites in mineral
regions.    Weeks on Mineral Lands, page 306, sec. 222;
Copp's United States Mineral Lands, page 201; Decis. of
Dep. of Interior and Gen. Land Office, 568–70.

The town site act of March 2, 1867, seems to fully recog-
nize the fact that there would be town sites where veins of
ore containing gold, silver, cinnabar and copper exist, for
in section 2392 of United States Revised Statutes, which
is a part of said act, it provides that by virtue of the pro-
visions of said act no title to any mine of gold, silver, cin-
nabar or copper should be acquired.

In speaking of this provision the United States supreme
court say in the case of *Steel* v. *Smelting Co.* 106 U. S. 450:
" The acts of congress relating to town sites recognize the
possession of mining claims within their limits and forbid
the acquisition of any mine of gold, silver, or cinnabar or
copper within them under proceedings by which title
to other lands there situated is secured."    Observe that
language.

"*There situated;*" *where situated?*   Where these mines of
gold, silver and cinnabar are *situated*.

It cannot be doubted that this language fully implies
that the land in proximity to mines of gold, silver, cinnabar
or copper can be taken and held as a town site.

There is other language in this opinion which shows the
views of that court.   On page 449 of said opinion it holds
this language: " Land embraced within a town site on the
public domain, when *unoccupied*, is not exempt from location
and sale for mining purposes.   Its exemption is only from

settlement and sale under the pre-emption laws of the United States."

Again on page 450 of the opinion:

"Whenever, therefore, mines are found in lands belonging to the United States, whether within or without town sites, they may be claimed and worked, provided the existing rights of others, *from prior occupation,* are not interfered with."

Here is certainly implied in this language that where ground is "occupied," that it cannot be located for a min_ing claim, and that the location of a mining claim must be subject to the rights of others from prior occupation. The language here is used in regard to the public domain, it should be observed; not in regard to land patented as a town site.

This opinion fully bears out the view that no new system was intended to be established in the mining regions. That, as before the passage of the mineral acts of congress, those who settled and occupied sections of the public domain for the purpose of dwelling-houses, stores and hotels were not to be completely at the mercy of mining locators. That they had a right to be there. That it was necessary to the proper development of the mining resources of any section that there should be places of abode and business in the neighborhood of mines, in proximity to them.

The theory upon which this case was tried was wrong. It seems to have been considered that the public domain could not be occupied as a town site or patented as such if in the vicinity of lodes or veins of gold, silver, cinnabar or copper ore.

The plaintiffs introduced in evidence a patent to the Smoke-house lode, which contained an exception, in the granting clause, of all town property rights upon the surface; "and there are hereby expressly excepted and excluded from the same, all houses, buildings, structures, lots, blocks, streets, alleys, or other municipal improvements on the surface of the above described premises, not belonging

to the grantee herein, and all rights necessary or proper to the occupation, possession and enjoyment of the same."

This exception is in accordance with the construction of the town site act and mining acts as above specified.

When an exception is in a granting clause of a conveyance, the conveyance must be construed as though the premises excepted had never been included therein. In other words, as though there had never been any conveyance thereof. Washburn on Real Estate, 3d vol. page 433 (369, 3d ed. marg. p. 640); *Greenleaf* v. *Birth*, 6 Pet. 302.

To say that an exception is void, and therefore the conveyance should be construed as though it was not there, would be enlarging the premises of the conveyance, and make it include what was not included, and what it was intended should not be included.

The court erred in refusing defendants' instructions marked 1, and admitting the Smoke-house patent in evidence.

When certain premises are excepted from a patent, it devolves upon those who seek to recover under the patent to show that the ground claimed is not part of the ground excepted. *Armstrong* v. *Morrell*, 14 Wall. 142–4; *Scott's Lessees* v. *Ratcliff*, 5 Pet. 86.

It is claimed, however, that the patent relates back to the date of location. Let it be granted. Still it would be incumbent for plaintiffs to prove that the premises in dispute were not a town lot at that date.

But what evidence was there in the case that there was any location made of the Smoke-house lode for this patent to relate back to? The only evidence offered was the location notice, and application for a patent to said lode. It did not appear that the claim was in fact located; that its boundaries were marked as required by law and a mineral vein discovered. The location notice and application were not sufficient to prove title. *Patterson* v. *Hitchcock*, 3 Col. 537–8; *Strepey* v. *Stark*, 7 Col. 618.

Whenever it is sought to make a patent relate back of

the date of its issuance, and attach itself to some prior right or equity, that right or equity must be established by proof.

In the first case in the United States decisions, *Blunt's Lessees* v. *Smith,* 7 Wheat. 248, it is evident the court inquired into the facts of the prior equities, as well as into their dates.

In the case of *Russ* v. *Borland,* 1 Pet. 655, it is evident that the facts constituting the prior equity to which the patent related were proven by evidence.

In the case of *Bagnell* v. *Brodrick,* 13 Pet. 451, this doctrine was approved.

In the case of *Megerle* v. *Ashe,* 33 Cal. 74, and that of *Smith* v. *Atherton,* 34 Cal. 506, the doctrine is fully set forth.

The same doctrine is announced in the case of *Kershaw* v. *Bissell,* 18 Wall. 255.

In this case the court points out the difference between this case where the contest is between two patents and where a patent is opposed by claim of right or equity unpatented.

It is said the patent proves everything claimed as to the location.

The discovery of a mineral vein and the marking of boundaries.

That this was undetermined by the patent, and that they were what the law requires.

This is not the purport of the decisions above cited, in a contest between two patents.

Those facts must be proved in order that the patent may relate back to the location.

The view contended for amounts to this: the patent relates back to the location and proves it, and is an adjudication that it is correct. For it will be seen in this case that the defendant offered to prove that no valid location of the Smoke-house lode was ever made, and thus prevent the relating back of the patent to the date claimed, but this the court refused.   See Transcript, page 109.

The doctrine of relation, however, is only to be invoked to subserve the ends of justice. *Lynch* v. *Bernal*, 9 Wall. 325; *Gibson* v. *Choteau*, 13 Wall. 101; *Jackson* v. *Griswold*, 4 Johns. 230.

What justice can there be in holding that a patent relates back to a location that defendant offers to prove was not made in accordance with law?

If the doctrine of relation, however, is to be invoked, why not apply that doctrine to the patent to the town site? The defendant offered to prove that the Butte town site had been occupied as such since 1866; that much of the ground embraced in the Smoke-house lode patent had been surveyed into lots, blocks, streets and alleys. But the plaintiffs objected and the court sustained the objection and defendants excepted. See Transcript, page 107.

There can be no doubt but that the general government recognizes the right to settle upon the public domain for town site purposes. The town site act supplements the preemption laws. *Village of Mankato* v. *Meagher*, 17 Minn. 272–4, and cases cited; *City of Denver* v. *Kent et al.* 1 Col. 336; *Smith* v. *Pope*, 3 Col. 187; *Leech* v. *Ranch*, 3 Minn. 448; Decisions of the Department of the Interior and General Land Office, 570.

In the case of *Stringfellow* v. *Caine*, 99 U. S. 616, the United States supreme court speaks of the rights of one settled upon a town site upon the public domain as an inchoate right. *Village of Mankato* v. *Meagher*, 17 Minn. 272–4.

In the case of *Lamb* v. *Davenport*, 18 Wall. 314, the United States supreme court say in regard to the settlement upon the Portland, Oregon, town site: "But it was equally well known that these possessory rights (that is, town lots) and improvements placed on the soil were by the policy of the government generally protected so far at least as to give priority of the right to purchase whenever the land was offered for sale and where no special terms existed to the contrary." See, also, *Jones* v. *City of Petaluma*, 38 Cal. 397; *Jones* v. *City of Petaluma*, 36 Cal. 230; *Leech* v. *Ranch*, 3 Minn. 448.

There is no reason for not applying the doctrine of relation to town site settlements that does not apply to any other settlement or claim upon the public domain. The doctrine does not rest upon statute, but is a rule of law established by the courts to subserve the ends of justice, as we have seen.

But it is said the land is mineral land, therefore not subject to settlement for town site purposes. How does the court know this? The plaintiffs have a patent to the Smokehouse lode and this proves it. The proper officers have so decided by the issuing of a patent.

Then the patent to O'Bannon of the Butte town site proves that it is not mineral land. *Pacific Coast M. & M. Co.* v. *Strags*, 16 Fed. Rep. 348; *Steel* v. *St. Louis Smelting & Refining Co.* 106 U. S. 447; *Leech* v. *Ranch*, 3 Minn. 448.

The patent to O'Bannon conveyed all of the Butte town site. *Boyan* v. *Forsyth*, 19 How. 334; *Mehan* v. *Forsyth*, 24 How. 175; *Gregg* v. *Forsyth*, 24 How. 179.

The recitation in the patent to O'Bannon, that it conveys no mines of gold, silver, cinnabar or copper, or any valid mining claim held under existing laws of congress, is not an exception. Greenleaf's Cruise on Real Property, book 4, marg. pages 271-2; Washburn on Real Property, 3d vol. marg. pages 636-40; *Greenleaf* v. *Birth*, 6 Pet. 302.

If it is claimed the conveyance is made subject to the rights of any one who has a valid mining claim, then the answer is, the plaintiffs should prove that they had a valid mining claim. The burden of proof is on the plaintiffs. *Whitney* v. *Morrow*, 112 U. S. 695.

The defendant, however, offered in this case to assume the burden of proof and to show that no valid mining claim existed at the date of the patent, but that the premises were and had been occupied as a town site, but the court refused to allow plaintiffs to do this. See Transcript.

This was error. *Morrow* v. *Whitney*, 95 U. S. 551.

But it was claimed the defendant did not offer to prove that this particular piece of ground in the case against

Morris was occupied. It was the part of a larger tract of ground which was occupied as a town site, and had to be entered with it. A town site has to be entered by legal subdivisions. *City of Denver* v. *Kent*, 1 Col. 336.

In the case of *Cofield* v. *McClellan*, 16 Wall. 333–4, the United States supreme court held that the trust is for the benefit of the occupants of a town site who were occupants at the date of the entry. This is the rule in the following cases: *Leech* v. *Ranch*, 3 Minn. 448; *Davis* v. *Barnes*, 3 Minn. 119; *Castner* v. *Gunther*, 6 Minn. 130; *Sherry* v. *Simpson*, 2 Kansas, 611.

As there is no way of entering a town site but by legal subdivisions, there is no way of holding the property not actually occupied but under the rule that it is occupied by the residents of the town site collectively. The beneficiary of this cannot be the United States, because the United States has parted with the property. See *City of Denver* v. *Kent*, 1 Col. 342.

But the deed from the probate judge proves that the premises were occupied, if occupation by the grantee was necessary. *Smith* v. *Pope*, 3 Col. 187; *Eyster* v. *Gaff et al.* 2 Col. 228.

It should not be assumed that all land embraced in a quartz mining location is mineral land or valuable for minerals. The idea of giving a party so much ground on each side of a vein discovered is for the convenient working of the lode and not because it is mineral land or valuable for minerals. Mineral lands must contain minerals, and land valuable for minerals must be valuable for the minerals therein, not valuable for use in connection with mineral lands. If lands can be said to be mineral lands, or valuable for minerals because they may be used in connection with or for the benefit of mines, then land a mile from a lode, although purely agricultural, would be considered mineral lands, or valuable for minerals. There seems to be no definition of the term mineral lands. Leading Cases of Mines and Minerals and Mining Water Rights lay down the rule

that the officers of the government must determine this question before making a patent. See above work, page 167.

If so the land department determined that the Butte town site was not mineral land.

In the case of *James A. Talbot et al.* v. *Gwin*, the de-·fendant offered ·to prove that the premises in dispute in that case were occupied by the grantors of defendant at the time and before the location of the Smoke-house lode. This the court refused. This ruling was error. *Steel* v. *Smelting Co.* 106 U. S. 447.

The court erred in refusing to allow defendant to prove the acts of estoppel set up in defendants' amendments to their separate answer. The former owners of the Smoke-house claim, while yet the only owners thereof, and know-·ing that the same would be included in the Butte town site, petitioned the probate judge to patent such ground for town site purposes, and in accordance therewith the town site was patented, and the owners of the Smoke-house claim accepted from the probate judge deeds to lots on the Smoke-house claim under the town site patent; and further these owners declared that they would not interpose or assert this lode claim or any rights thereunder as against the town site patent or the parties claiming thereunder.

The owners of the lode claim never at any time acquainted any of the parties in interest with the fact that they had or claimed such a claim as the Smoke-house lode claim, but stood by and saw the town site patent procured, saw parties purchase lots under such patent and improve the same, and not only permitted the same to be done without objection, but encouraged and assisted the probate judge in procuring the patent, and never at any time intimated to the purchasers of town lots that they had or held a claim adverse to the town site, while the claimants ·under the town site were ignorant that any such claim as the Smoke-house existed, and believed, as they were led to

believe, that they were acquiring a perfect title to their lots.

All of these facts the defendants offered to prove by Savage and Burkett, the former owners, themselves, and by the probate judge and other witnesses, but the court declined to hear the evidence, because, although true, the facts did not constitute an estoppel.

If these facts do not constitute an equitable estoppel or estoppel *in pais*, then it would be indeed hard to imagine a state of facts that would. The owners of the Smoke-house claim have been guilty of every act that would tend to constitute an estoppel, except an actual and positive fraud, and that may well be inferred from the circumstances of the case, if the court should hold that actual fraud is a necessary ingredient of this defense. Counsel argued, and we presume the lower court held, that all the elements of estoppel were not contained in defendants' plea, and several extreme authorities were cited to support the objection; and while we do not admit that the facts in this case are lacking in a single element required by any authority that may be cited, we insist that the few authorities relied upon by respondents do not properly set forth the true principles of the law of estoppel. And we submit that the authorities below cited, and especially the late decisions of the supreme court of the United States, bring the present case clearly within the principles there laid down. And in these cases all the elements of estoppel as insisted on by respondents did not exist, as an examination of the several cases will plainly show.

The owners of the Smoke-house lode had an election to have their ground patented either as a town site or a quartz lode claim, and having exercised the election, and assisted in patenting it as a town site and surrendered the claim as a quartz claim, they cannot now be heard to assert the quartz title. *Baker* v. *Braman,* 6 Hill, 47; *Matter of Application of Edward Cooper,* 93 N. Y. 507; *Embury* v. *Connor,* 3 N. Y. 511; Bigelow on Estoppel, 551–3 (n.), 534–5 (n.); *Niven*

v. *Belknap*, 2 John. 573; *Dickerson* v. *Colgrove*, 100 U. S. 578; *Baker* v. *Humphrey*, 101 U. S. 494; *Kirk* v. *Hamilton*, 102 U. S. 68; *Rutherford* v. *Tracy*, 48 Mo. 325; *S. C.* 8 Am. Rep. 104; *Rice* v. *Bunce*, 49 Mo. 231; *S. C.* 8 Am. Rep. 129.

In the case of the application of Edward Cooper (93 N. Y. 507), it is held that where one petitions for certain proceedings concerning real estate to be had, that he cannot afterwards object that such proceedings were unconstitutional, but that the title to his property would pass thereunder, although unconstitutional. In the case at bar the respondents object that no title passed by the town site patent, because issued in violation of statute, and that their statutory rights could not be impaired thereby.

Now the petitions in the two cases are much alike, and the facts constituting an estoppel much stronger in the case at bar than in the New York case, and it seems plain that if certain facts would estop a party from invoking a constitutional right, the same facts would estop him from seeking protection under a statutory provision. If property may be divested in violation of a constitution, the same facts would divest it in contravention of a statute. Whether the statute prevented the entry of mineral land as a town site or not, the only one who could object to such entry would be the owner of the mineral land, and if he waives the statutory right to have it patented as mineral land, and acts in a manner that would estop him from claiming it as mineral land, then the town site patent becomes perfect, because the owner is estopped from asserting the mineral location. When the owners of the Smoke-house claim petitioned for the entry of this identical ground for town site purposes, they admitted that it was subject to such entry, and consequently that the ground was not mineral, and that no valid location thereof existed, and waived whatever right they had thereto under the mineral laws. Can they now be heard to contradict this admission after rights have been acquired on the faith of these representations?

According to the decision of this court in *Silver Bow M. &
M. Co.* v. *Clark et al.*, mineral land cannot be patented for
town site purposes, and therefore the positions which the
Smoke-house owners have occupied are contradictory, first
encouraging parties to acquire the ground for town site pur-
poses, and afterwards asserting a hostile and incompatible
title against the town site title.   Under such circumstances
they ought to be bound by that position which will do least
injury to third persons.

But it is further objected that even though this estoppel
did exist, it has been removed by the issuance of a patent
by the United States.

In answer to this it is only necessary to refer to the posi-
tion of respondents, who claim that the patent to the Smoke-
house claim relates back to the date of location, and that
the title acquired by patent is but confirmatory of the loca-
tion; that the title was as perfect before patent as after.   If
this is true, then what would be a good defense against the
location is a good defense against the patent.   It is one
and the same title, and the actual grant was made by the
government at the date of location and not at the date of
patent, and in the issuance of the patent the government
merely passed upon the sufficiency of the location, and de-
termined in whom the legal and not the equitable title
rested.   Were it otherwise, as respondents contend, then all
equities would be cut off by patent, and an action to de-
clare a trust as against a patentee would be unavailing,
which we know is not the case.   The position assumed
seems to be that for the purpose of having plaintiffs' title
antedate the defendants, the patent relates to the date of
location, but for the purpose of escaping the consequences
of the estoppel, the date contained in the patent is only to
be considered.   We do not believe the courts will follow so
inconsistent a rule.

W. W. DIXON, for the respondents.

I. These cases are separate appeals by different defend-

ants from separate judgments against them to recover possession of different parcels of land.

The appellants in No. 454 are Gwin, Morehouse, Daly, and Stack; in No. 455, Jonathan C. Baker; and in No. 465, John L. Morris.

By agreement the appeals are argued together. The material points of difference in the three cases are these:

1. In No. 454 the appellants offered to prove that the ground claimed by them was occupied as a town lot for some years prior to the location of plaintiffs' Smoke-house lode claim. See p. 80, Transcript, No. 454.

In Nos. 455 and 465 appellants did not offer or expect to prove that the lots claimed by them were occupied at the time of the location of the Smoke-house lode claim. See pp. 75 and 76, Transcript, No. 455; pp. 108 and 109, Transcript, No. 465.

2. In Nos. 454 and 455 respondents gave in evidence without objection the application made in the United States land office at Helena for patent to the Smoke-house claim, showing that such application was made upon the location of said claim of date April 16, 1875. See p. 62, Transcript, No. 454; p. 57, Transcript, No. 455.

In No. 465, by stipulation of counsel, it was admitted that the application for patent to the Smoke-house claim was made and the patent was issued upon the location of said claim made April 16, 1875, and that no adverse claim was made to said application. See pp. 85–87, Transcript, No. 465.

In other respects the three appeals involve the same points.

II. In the case of *The Silver Bow Mining and Milling Company* v. *Clark et al.*, decided by this court at the January term, 1885, and reported in West Coast Reporter of 19th of February, 1885, p. 403, and in Pacific Reporter of 12th February, 1885, p. 570, nearly all of the main points involved in these three appeals at bar were settled in favor of respondents.

Much of the appellants' brief in the cases at bar is taken

up in a re-argument of matters already decided by this court in the Silver Bow case. I do not propose to take time to argue these matters again, but rely on the opinion of the court in the Silver Bow case, and refer to respondents' brief in that case, and also upon the point that the patent relates back to the date of location, to the following additional authorities: *McAfee* v. *Keim*, 7 Smedes & Marshall, 780 (45 Amer. Dec. 331); *Richmond M. Co.* v. *Rose*, 114 U. S. 576; *Martin* v. *Marks*, 97 U. S. 345.

The following, among other points, I hold have been settled by this court in the Silver Bow case, viz.:

1st. That a mining location under the act of 1872 operated as a grant from the government and gave the right to the exclusive possession and enjoyment of the surface, and that this right is not limited by the previous act of 1865.

2d. That a valid location of a mining claim is not affected by a subsequent entry of a town site thereon.

3d. That the land department has no authority to issue patents for town sites upon any mining claim; and if it does so, the patent is so far void.

4th. That a patent for a mining claim relates back to the location, and is a consummation of the right of purchase acquired by the location; and the land department cannot defeat this right.

5th. That exceptions of town site surface rights in a patent for a mining claim are void.

III. Appellants claim that no evidence of the location of the Smoke-house claim was given to which the patent could relate back. But the record shows otherwise. In No. 465 it was admitted that the patent issued upon a location made in April, 1875, and in Nos. 454 and 455 the application for patent, which was introduced in evidence without objection, showed the same fact. [See above, I.]

But appellants contend that this was not sufficient proof, and that the facts constituting the location should have been shown, or at least that appellants should have been allowed to prove that there was no valid location.

None of the authorities upon these points cited by appellants were in regard to mining claims, nor in cases where (as in applications for patents for mining claims) opposing claimants were required by statute to assert and have their claims adjudicated before patent issued.

The cases in 7 Wheat. and 1 and 13 Pet. merely followed the state statutes and practice.

In *Henshaw* v. *Bissell*, 18 Wall. 267, it was held that where under the statute a survey had been made and notice given to adverse claimants to assert their rights and the survey confirmed, this was conclusive as to the adverse claimants who did not oppose the confirmation, and they could not afterwards be heard.

Respondents claim that the theory of the act of congress, as appears from its terms and as established by the decisions of the courts in relation to this matter, is as follows:

There is no way in law of acquiring any right of possession or title to public mineral land except by location. The government does not sell or offer to sell it except to locators. The first step in the application for patent, and the first and essential fact to be shown to give the land department jurisdiction to proceed to patent, is a location. If such location is disputed by an adverse claim, the question is referred to the courts. Otherwise, the land department does, and necessarily must, pass upon the validity of the location, and its decision, where there is no adverse claim, must be conclusive, and it is too late after issuance of the patent to question the location upon which it was issued. Parties in interest are notified and have a time and a mode given them to question the location, if it is not valid.

If appellants' view is correct, a patent is conclusive of nothing. In every contest as to his title, the patentee would have to go back, perhaps to remote years, and prove his location. Although he held the patent from the government, and had complied with all the requirements of law to obtain it, any other claimant under a location prior

to the patent (although subsequent to the location upon which the patent issued) could question his right, and, if he did not establish his location, would recover the ground from him in spite of his patent.

Respondents hold that the patent is conclusive of the validity of the location. The land department has passed upon and adjudicated the question. It has decided that the location upon which the patent is granted is a legal location, and that the locators are the parties entitled to the patent.

Otherwise, a mining patent is a snare and a delusion, and settles nothing.

As to the conclusiveness of patents, etc., see *Langdean* v. *Hanes*, 21 Wall. 521; *Marsh* v. *Brooks*, 8 How. 223; *Polk's Lessee* v. *Wendell*, 9 Cranch, 87; *S. C.* 5 Wheat. 293; *Hufnagle* v. *Anderson*, 7 Wheat. 212; *Smelting Co.* v. *Kemp*, 104 U. S. 636; *Steel* v. *Smelting Co.* 106 U. S. 447; *Chourchaine* v. *Bullion M. Co.* 4 Nev. 369; *Silver Bow Co.* v. *Clark* (above cited). See also authorities cited in respondents' brief in Silver Bow Case.

See also *Eureka Case*, 4 Sawyer, 317, where Judge Field says: "Each patent is evidence of a perfected right in the patentee to the claim conveyed, the initiatory step for the acquisition of which was the original location. If the date of such location be stated in the instrument, *or appear from the record of its entry in the local land office*, the patent will take effect by relation as of that date, so far as may be necessary to cut off all intervening claimants," etc.

In the cases at bar, the date of location did appear from the record of the entry in the local land office, as stated above, and the evidence came directly within the rule laid down by Judge Field.

IV. Appellants claim that the doctrine of relation should also be applied to the town site patent; but it cannot. No right is acquired by settlement for town site purposes upon mineral land, nor in any case does the government make any grant or give any right (as to locators of mining ground) to occupants of town sites before entry or patent.

Appellants also ask, how does the court know that the land in controversy was mineral land? The answer is that this was a question within the jurisdiction of the land department to decide, and it did so decide necessarily by issuing a patent for it as mineral land. See *Steel* v. *Smelting Co.* 106 U. S. 450.

Appellants claim that the town site patent proves that the land was not mineral.

Then why was the provision inserted in that patent that no title should be thereby acquired to any mine or valid existing mining claim?

V. As to the error alleged to have been committed by the court below in rejecting the evidence offered to support appellants' plea of estoppel.

1st. The matter pleaded lacked many of the elements of estoppel, as defined by the best authorities. See *Boggs* v. *Merced M. Co.* 14 Cal. 279; *Davis* v. *Davis*, 26 Cal. 23; *Henshaw* v. *Bissell*, 18 Wall. 271; Bigelow on Estoppel, 476 and 593, 493; *Meyendorff* v. *Frohner*, 3 Mont. 321; *Martin* v. *Zellerbach*, 38 Cal. 300; *Marquart* v. *Bradford*, 43 Cal. 526; *Ferris* v. *Coover*, 10 Cal. 589; *Brant* v. *Virginia C. & I. Co.* 93 U. S. 326; 2 Story's Eq. Jur. secs. 1543 and 1553.

2d. Estoppel does not apply to subsequently acquired title. Bigelow on Estoppel, pp. 476–493, 525, 471

3d. And an estoppel does not apply to the government or its grantees. Bigelow, pp. 378–9, 246; *Carr* v. *United States*, 98 U. S. 433; *Wallace* v. *Maxwell*, 10 Iredell, 110 (51 Amer. Dec. 380); *Steel* v. *Smelting Co.* 106 U. S. 447.

In this last case the plea of estoppel was fully as strong as in the cases at bar, but it was held not good.

Appellants argue that the Smoke-house owners had an election to have their ground patented either as a town site or a lode claim, and that they elected to have it patented as a town site, and are now estopped to claim it as a lode claim.

It would be a curious legal principle to hold that a citizen by his silence or his acts or declarations could accomplish what the government under the law cannot do; that he could change mineral land into agricultural land or into a

town site; that it was a mere matter of choice with him to patent land for mining or town site purposes, and that when he had made his choice he not only concluded himself but the government also.

It is a sufficient answer to this argument to say, in the words of Judge Field in *Steel* v. *Smelting Co.* 106 U. S. 456, "these matters could not operate to estop the government in any disposition of the land it might choose to make. Whatever right, therefore, the government possessed to use or dispose of the property freed from any claim of the defendants it could pass to its grantee."

VI. Aside, however, from all the questions above considered, and admitting for the sake of the argument that appellants' points in these cases are well taken as abstract propositions of law, there is one vital and insuperable objection to the reversal of these cases for any of the reasons alleged by appellants.

The objection goes to all the grounds of error specified, and indeed to the whole alleged defense — to the invalidity of location as claimed, to the prior rights asserted by occupation and under the town site patent, and to the estoppel urged.

This objection is that the appellants have waived, and are now estopped and concluded from asserting, any of the rights they claim to the property in dispute, because they failed to assert their rights by adverse claim to the application for the Smoke-house patent.

It must be remembered that this is not an action in equity by appellants to have the title acquired by respondents declared to be held in trust by respondents for appellants, or to have such title conveyed to or declared to be in appellants, by reason of some equity which might authorize such relief.

The action is merely one in ejectment, to which certain equitable defenses are pleaded.

The act of congress of 1872 contemplates and intends that all opposing rights shall be asserted by adverse claim to the application for patent, and that the conflicting rights

shall be judicially determined before any patent is issued-
For this purpose notice is required to be given and time is
allowed for filing adverse claims and commencing suits
thereon.

The evident intention is that when once the patent is
issued it shall be conclusive evidence of title and a bar to
opposing claims.                                •

The statute requires all adverse' claims to be filed, and
thereupon the matter is referred to the courts to " determine
the question of the right of possession."

The appellants here claimed the right of possession to
the surface ground of the lode claim, and the surface is as
much a part of the lode claim as the ground beneath the
surface, and the mining locator or patentee acquires as
much right to it. The claim of appellants was an adverse
claim, and as such should have been made, and by fail-
ure to make it they have lost any rights they may have
had.

The statute says that if no adverse claim is filed it shall
be assumed that the applicant is entitled to a patent and
that no adverse claim exists, and that thereafter no objec-
tion by third parties to the issuance of a patent shall be
heard, except it be shown that the applicant has failed to
comply with the terms of the law.   U. S. R. S. sec. 2325.

No claim is made here that the proceedings to obtain
the Smoke-house patent were not according to law.

To show this view of the question is supported by the
courts of the United States reference is made to the follow-
ing authorities, which should be conclusive: *Smelting Co.*
v. *Kemp,* 104 U. S. 638; *Steel v. Smelting Co.* 106 U. S.
447; *Eureka Case,* 4 Sawyer, 302; *Richmond M. Co.* v.
*Rose,* 114 U. S. 584.

In this last case the court says " *that the patent is ren-
dered conclusive as to all rights which could have been asserted
in the proceeding.*"

The rulings and judgments of the court below were cor-
rect and should be affirmed.

WADE, C. J.   These cases, which were argued together, and involve the same questions, may well be determined by one decision.   The actions are in the nature of eject-ment, in which the plaintiffs below and respondents here seek to recover possession of the Smoke-house Quartz lode mining claim, situate in the Summit Valley mining district, Silver Bow county.   They claim title and right of posses-sion by virtue of a patent, dated March 15, 1881, issued in pursuance of a location, as they contend, made April 16, 1875.   The appellants claim title to a portion of the ground included in the Smoke-house patent under and by virtue of a patent for the "Butte" town site, issued September 26, 1877, to the probate judge of Silver Bow county, in trust for the occupants of said town.   The patent for the Smoke-house location contains the following exception: "Except-ing and excluding, however, from these presents all town property rights upon the surface, and there are hereby ex-pressly excepted and excluded from the same all houses, buildings, structures, lots, blocks, streets, alleys, or other municipal improvements on the surface of the above-de-scribed premises, not belonging to the grantees herein, and all rights necessary or proper to the occupation, possession and enjoyment of the same."

And the town site patent contained the following: "No title shall be hereby acquired to any mine of gold, silver, cinnabar, or copper, or to any valid mining claim or pos-session held under existing laws of congress."

The plaintiffs offered in evidence the patent for the Smoke-house location, which was objected to for the reason that the exception contained in such patent excludes all town lots from the grant thereby made, and that it was necessary for the plaintiffs to show that the property in controversy was not one of the lots on the Smoke-house lode claim, which was excepted from the grant.   The pat-ent was received in evidence, the defendants excepted, and this is the first assignment of error.

The only reason why a patent may be issued for a quartz-

lode mining claim is, that the ground has been previously located according to law. Such a location gives the person making the same the right to the exclusive possession and enjoyment of all the surface ground included within the lines of his location. This is a provision of the statute, and the right thereby conferred cannot be encroached upon while the statute remains in force. In the case of *The Silver Bow M. & M. Co.* v. *Clark,* 5 Mont. 378, we held that such an exception in a patent for a mining claim was void, for the reason that the location of a claim according to law had the effect of a grant from the government to the locator of the right to the exclusive possession and enjoyment of all the surface ground included within the lines of his location, and that the patent was but the perfecting and consummation of the title conveyed by the location. In that case we said: "The principles enunciated in these cases apply with much force to a case where the land office, without authority of law, inserts an exception into the granting part of a patent whereby the title of the patentee is defeated. The Pawnbroker mining claim, at the time of the issuance of the patent therefor, was a valid claim and possession under existing laws of congress, and the patentee was entitled to the exclusive possession and enjoyment of all the surface ground thereof. There was no law depriving him in any manner of the right to such possession. He had purchased the property and paid for it, and was entitled to a conveyance of the full and complete title. As between individuals, he stood in a position to compel such a conveyance. There was no law authorizing the land department to except the surface ground from the conveyance, or in any other manner to abridge the title of the purchaser, and in so doing it exceeded its authority, and its act, to that extent, is void and of no effect upon the property conveyed. An exception that is void leaves the patent to stand as though it contained no such exception." Id. 425, 426.

A valid location is equivalent to a contract of purchase.

The right to occupy and purchase means the right to acquire a full title. The mineral lands are declared open to occupation and purchase. The location, together with the necessary work, is the purchase, and the patent is the evidence of the title so acquired. The location, therefore, has the effect of a grant from the government to the locator, and this grant cannot be defeated or abridged by an unauthorized exception contained in the patent, for the patent must always be in accordance with and the consummation of the grant evidenced by a valid location. It is contended, however, that the act of congress of March 3, 1865 (U. S. R. S. sec. 2386), limits the title to the locator of a mining claim, under the act of congress of May 10, 1872 (U. S. R. S. sec. 2319), to the necessary use of the ground located for mining purposes. The act provides as follows: "Where mineral veins are possessed, which possession is recognized by local authority, and to the extent so possessed and recognized, the title to the town lots to be acquired shall be subject to such recognized possession and the necessary use thereof."

This statute was enacted at a time when it was the settled policy of the government not to sell its mineral lands, and when it was impossible for an individual to acquire title to such lands. Even then, when mineral veins were held and possessed by virtue of mere local rules and regulations, and when the title could not be acquired, the title to the town lots under the town site act were subject to the necessary possession and use of the mine-owner. Even then, when the government did not propose to part with its title to the mineral lands, the possessory title to the mine, such as it was, is made superior to that of the lot-owner under the town site act. That act gave to the mine-owner all the title he had, made the lot-owner's title subject to it, and is not at all inconsistent with the act of 1872, which opens the public mineral lands to exploration and purchase, and gives to the locator the full title when its terms have been complied with. The patent for the town

site of Butte was issued September 26, 1877. The location of the Smoke-house claim was made April 16, 1875.

On the trial the appellants offered to prove that in 1866 all of the premises included in the Smoke-house location had been surveyed for a town; that streets had been marked out and town lots designated in such survey, and that the ground in controversy in this action was, in 1866, laid out as a town lot, and was then actually occupied and possessed by appellants' grantors as a town lot, and has been occupied continuously by appellants and their predecessors in interest from 1866 to the present time, as a town lot and for town purposes, and that since 1866 the town of Butte has been actually settled and occupied as a town site by a number of people; that at times before the location of the Smoke-house lode claim, there had lived and were living within the bounds of the Butte town site several hundred people, many of whom had resided upon the premises now known as the Smoke-house lode claim, and that at the time of the location of said Smoke-house lode claim, it embraced within its bounds a large portion of the settlements of said town of Butte. The introduction of this evidence was objected to, for the reason that no rights can be acquired by settlement upon the public domain for town lot purposes as against the United States or its grantees; that under the laws of the United States, mineral lands are not open to settlement for town sites; but all such mineral lands are reserved; that defendants and their grantors having accepted and now claiming title under the Butte town site patent with a reservation therein authorized by law, that no title was thereby acquired to any valid mining claim or possession, or to any mine of gold, silver, cinnabar, or copper, cannot now claim title as against any valid, existing mining claim, but are estopped so to do; that any right or claim defendants or their grantors may have had to the premises in controversy by prior possession, or by prior occupation of the Butte town site, should have been set up by adverse claim to the application for the

Smoke-house lode patent in the United States land office, and that defendants having failed to set up any such adverse claim are now precluded from asserting the same — which objections were sustained, and this action of the court is also assigned as error.

Did the occupation of the ground included within the boundaries of the Smoke-house location from 1866 up to the date of its location in 1875, and subsequent thereto, as set forth in the proposed testimony, and the issuance of the town site patent in 1877, subject and limit the title conveyed by the Smoke-house location, and the patent issued in pursuance thereof, and cause such title thereby to become simply a title to the necessary use of the ground located for mining purposes, and for such purposes only? The mere possession of the mineral lands without a discovery conveys no title. The occupation of the mineral lands as and for the purposes of a town lot is of no effect as against a valid mining-claim location, and no rights or equities flow therefrom. The statute expressly forbids the acquisition of title to any mine, mining claim, or possession by virtue of such occupation, and a town site patent issued in pursuance thereof. The appellants claim title by virtue of a patent which provides, as required by law, that no title shall be acquired by such patent to any mine of gold, silver, cinnabar, or copper, or to any valid mining claim or possession held under existing laws of congress. That the Smoke-house location was a valid mining claim under and in pursuance of the law is conclusively shown by the fact that the land department issued a patent therefor.

That department supervises the issuance of patents. Its findings, within the scope of its jurisdiction, are final. Before it issued the patent it must have found that the Smoke-house location was a valid mining claim or possession, and if it was such a claim or possession in 1875, and so continued, no title thereto was acquired by virtue of the town site patent of 1877.

What rights, then, was the Smoke-house location subject

to? The town site patent conveyed no interest in the ground, and all that the appellants can claim as against the Smoke-house location and patent is the mere occupation of the mineral lands within the boundaries of such location as a town lot from 1866 to the date of this action. Such a claim must fall as against a patent issued in due form of law, and against which nothing is alleged. There is not necessarily any conflict between a town site patent and a mining claim patent within the town site. The town site patent takes hold of and conveys title to the lands within its limits, except the mines and mining claims and possessions therein in trust for the occupants thereof for town purposes, while the mining claim patent only affects the grounds within which there has been a discovery and location according to law.

The location of a mining claim carries with it the right to the exclusive possession of the surface ground within the boundaries of the location. The location is a claim to the exclusive possession of the surface ground, as well as to the veins and deposits beneath the surface within the boundaries of the location. If the appellants acquired no title to the grounds included within the boundaries of the Smoke-house location and patent, by virtue of the town site patent,— and they did not if the same was a valid mining claim and possession at the date of the issuance of the town site patent,— then, if they claimed any rights by virtue of their prior occupation and possession, they should have filed their adverse claim, and failing so to do, their rights, if any, by virtue of such occupation and possession, became barred. Their claim, if they had any, was that of possession. The locators of the Smoke-house claim, by their location, asserted a right to the exclusive possession, and it is the office of an adverse claim to have determined the right to the possession.

A person claiming possession adverse to the locator of a mining claim cannot delay until the patent is issued, and then, without attacking the patent, claim by virtue of prior

possession. The patent concludes and bars the rights which he has neglected, within the time provided by law, to assert.

It would indeed be preposterous, as asserted in appellants' brief, that a person having a patent for a piece of land should be compelled to file an adverse claim against another who had applied for a patent for the same land. The statement of such a proposition would be its own refutation. But that is not this case. The town site patent conveys no title whatever to the Smoke-house mining claim or possession. That claim had been granted and sold, and had ceased to be public mineral land long prior to the issuance of the town site patent, and the only title or right of appellants was that of occupation and possession, and this they failed to assert.

The appellants offered to prove that the Smoke-house lode claim, for which respondents received a patent March 15, 1881, was not a valid mining claim at the date of the notice of location, April 16, 1875, or at any other time; that said claim had not been staked, or its boundaries so marked as to identify the claim; and that it was not a valid mining claim, held under existing laws of congress, at the date of the issuance of the town site patent, September 26, 1877.

This evidence was rejected and error assigned. All these matters pertaining to the issuance of a patent for a mining claim — the discovery and location, the marking and bounding so that the claim may be identified and its lines readily traced; the notice and the work and labor to be performed — are all matters that come before the land department, and are conclusively adjudicated therein. That department supervises the issuance of the patent. It is a special tribunal created for that purpose, and within the scope of its jurisdiction its adjudications are final and conclusive. Before a mining claim patent can issue it must be established in the land department by competent evidence that there has been a discovery within the boundaries of the claim, and a no-

tice and location according to law; that the necessary work
has been done, and that all preliminary and precedent acts
have been performed, which authorize and justify the issu-
ance of the patent.

The issuance of the patent conclusively proves all these
precedent acts and facts which the land department must
find to exist before the patent can rightfully issue. The
act of the department, therefore, in issuing a patent, is an
adjudication, and, like a judgment, is final as to all matters
necessarily included in and determined by it. What, then,
does a patent to a mining claim prove? 1. That the lands
bounded and described therein are mineral lands; 2. That
a discovery and location within said boundaries has
been made according to law; and 3. That the necessary
amount of work has been performed thereon, and that all
preliminary and precedent acts necessary in order to au-
thorize and justify the issuance of the patent have been
performed as the law requires. The issuance of a mining
claim patent proves that there was a discovery and location
according to law. The patent for the Smoke-house mining
claim of March, 1881, relates back to the Smoke-house loca-
tion of April, 1875; and is the consummation of the title
then acquired.

The patent proves the location, and no other proof was
necessary, and the testimony offered to prove the insuf-
ficiency of the location and notice, after the patent had is-
sued, was incompetent. After the adjudication in the land
office and the issuance of the patent in pursuance thereof,
it would be as incompetent to question the sufficiency of
the location and notice upon which the patent was issued
as to attack the complaint after the rendition of a final
judgment. The patent relates back to the location, and is
supported by it, as a complaint supports the judgment. If
it does not, and if a patent, which is the solemn act of the
government in parting with its title, may be attacked when
offered in evidence, for the reason that the location and
notice, or that any other fact necessarily and properly

passed upon by the land department, were insufficient, or not properly proved, or if these preliminary and precedent matters once adjudicated and determined by the land department may be tried again, and the title of the government's grantee questioned, then mining-claim patents are utterly worthless, and afford no protection to the patentee.

As was said in the case of *Smelting Co.* v. *Kemp*, 104 U. S. 636: " It is the unassailable character of the patent which gives to it its chief, indeed its only value as a means of quieting its possessor in the enjoyment of the lands it embraces. If intruders upon them could compel him, in every suit for possession, to establish the validity of the action of the land department, and the correctness of its rulings upon matters submitted to it, the patent, instead of being a means of peace and security, would subject his rights to constant and ruinous litigation. He would recover one portion of his land if the jury were satisfied that the evidence produced justified the action of that department, and lose another portion, the title whereto rests upon the same facts, because another jury came to a different conclusion. So his rights in different suits upon the same patent would be determined, not by its efficacy as a conveyance of the government, but according to the fluctuating prejudices of different jurymen, or their varying capacities to weigh evidence."

In *Steel* v. *Smelting Co.* 106 U. S. 447, the court said: " The land department, as we have repeatedly held, was established to supervise the various proceedings whereby a conveyance of title from the United States to portions of the public domain is obtained, and to see that the requirements of different acts of congress are fully complied with. Necessarily, therefore, it must consider and pass upon the qualifications of the applicant, the acts he has performed to secure the title, the nature of the land, and whether it is of the class which is open to sale. Its judgment upon these matters is that of a special tribunal and is unassailable except by direct proceedings for its amendment or limitation." In *Johnson* v. *Towsley*, the effect of the action of the

land department was the subject of special consideration, and the court said, "that when the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal, within the scope of its authority, is conclusive upon all others; that the action of the land-officer in issuing a patent for any of the public lands subject to sale by pre-emption or otherwise is conclusive of the legal title must be admitted under the principle above stated, and in all courts and in all forms of judicial proceedings where this title must control, either by reason of the limited powers of the court or the essential character of the proceeding, no inquiry can be permitted into the circumstances under which it was obtained." 13 Wall. 72; *French* v. *Fyan,* 93 U. S. 169; *Quinby* v. *Conlan,* 104 id. 420; *Vance* v. *Burbank,* 101 id. 514; *Beard* v. *Federy,* 3 Wall. 478; *Moore* v. *Wilkinson,* 13 Cal. 478.

The only means by which a patent can be obtained to the mineral lands is by a discovery and location thereon. A discovery and location is as necessary to a mining-claim patent as is a complaint to a judgment, and a fact that a patent has issued is conclusive proof of a discovery and location according to law. It appears from the record herein that the plaintiffs introduced in evidence without objection the application made to the land office at Helena, Montana, showing that the parties to whom the Smoke-house lode patent was issued made application for a patent to said lode claim in the land office at Helena in 1878, and that such application was made upon the location and notice of said claim, of date April 16, 1875, a copy of which notice was attached to the application, and is set forth in the record.

The date of the location of the Smoke-house claim appears from the record of its entry in the local land office, and the patent will take effect by relation as of that date so far as may be necessary to cut off all intervening claimants. The reason for this is obvious. The location itself has the effect of a grant, or as Justice Knowles said in *Rob-*

*inson* v. *Smith*, 1 Mont. 416: " It is a title given by an act of congress, and hence equivalent to a patent from the United States."

The patent is simply the evidence of this precedent grant, and must necessarily relate back to it.

In the case of *The Silver Bow M. & M. Co.* v. *Clark*, 5 Mont. 378, this court said: "A patent relates back to the right. A patent for a mining claim relates back to the location, and is the consummation of the purchase then made."

In *Stark* v. *Storrs*, 6 Wall. 418, the supreme court of the United States says: "The patent relates back to the inception of the right of the patentee, so far as it may be necessary to cut off intervening claimants." The patent being but confirmatory of the title by location, the patentee obtains the same right under it that he would have obtained if the patent had issued immediately after the location and compliance with the terms of the statute. In the *Eureka Case*, 4 Saw. 317, the court says: "All these patents are founded upon previous locations, taken up and improved according to the customs and rules of miners in the district. Each patent is the evidence of a perfected right in the patentee to the claim conveyed, the initiatory step for the acquisition of which was the original location. If the date of such location be stated in the instrument or appear from the records of its entry in the local land office, the patent will take effect by relation as of that date, so far as may be necessary to cut off all intervening claimants, unless the prior right of the patentee, by virtue of his earlier location, has been lost by failure to contest the claim of the intervening claimants as provided in the act of 1872."

As in the system established for the alienation of the public lands, the patent is the consummation of a series of acts having for their object the acquisition of the title, the general rule is to give to it an operation by relation at the date of the initiatory step, so far as may be necessary to protect the patentee against subsequent claimants of the same

property.   As was said by the supreme court in the case of
*Shepley* v. *Cowan*, 91 U. S. 338: "Where two parties are con-
tending for the same property, the first in time in commence-
ment of proceedings for the acquisition of title, when the
same are regularly followed up, is deemed to be the first in
right." *Smelting Co.* v. *Kemp*, 104 id. 647; *Ross* v. *Barland*,
1 Pet. 655; *Hydenfeldt* v. *Daney G. & S. M. Co.* 93 U. S. 634;
*Taylor* v. *Brown*, 5 Cranch, 234.   See, also, *Langdeau* v.
*Hanes*, 21 Wall. 521; *Marsh* v. *Brooks*, 8 How. 223; *Polk's
Lessee* v. *Wendall*, 9 Cranch, 87; 5 Wheat. 293; *Hoofnagle*
v. *Anderson*, 7 id. 212; *Steel* v. *Smelting Co.* 106 U. S. 447;
*Chouerchaine* v. *Bullion M. Co.* 4 Nev. 369.

The doctrine of relation cannot be invoked in aid of the
town site patent as against the Smoke-house mining claim,
for that patent did not purport or attempt to convey any
interest in that, or any other mining claim or possession,
within the boundaries of the town site.   The town site
patent could only convey title to the public lands.   The
grounds within the boundaries of the Smoke-house location
ceased to be public lands when that location was made
(*Silver Bow M. & M. Co.* v. *Clark, supra*); and if the town
site patent had attempted to include such grounds, it would
have been so far void.   If the lands had been previously
disposed of, or reserved from sale, the patent would be in-
operative to pass the title, and objection to it could be taken
on these grounds at any time and in any form of action.
*Steel* v. *Smelting Co. supra; Silver Bow M. & M. Co.* v.
*Clark*, 5 Mont. 378.   The location of the Smoke-house
mining claim was the first step taken by either of these
parties towards the acquisition of title to the property in
dispute; and if this ground had been, in fact, included in
both patents, the rule would be as held in *Shepley* v. *Cowan,
supra*, that where two parties are contending for the same
property, the first in time in the commencement of proceed-
ings for the acquisition of title, when the same are regu-
larly followed up, is deemed to be the first in right.

If it is claimed that by any means the occupants of the

mineral grounds embraced within the Smoke-house location acquired any right or title thereto by virtue of such occupation prior to 1875, when the location was made, or that the town site patent relates back to any such rights, the answer is that in such a case the locators of the mining claim would become intervening claimants, and the prior rights of the occupants, if they had any, would be forfeited and lost by a failure to file an adverse claim.

Prior rights are lost by a failure to contest the claim of the intervening claimant, as provided in the act of 1872. *Stark* v. *Storrs, supra.*

If the locators of the Smoke-house claim had made application for a patent in 1875, immediately after the location, as they might have done, all that the town site occupants of the ground embraced within the location could have done would have been to have filed an adverse claim, and had the right to the possession of the ground adjudicated. If these were all their rights then, they acquired no additional ones by virtue of the issuance of the town site patent, which excluded from its operation all mining claims and possessions, and conveyed the town site to the probate judge for town site purposes in trust for the use and benefit of the several occupants, according to their respective interests.

Matter is alleged in the answer as an estoppel, and on the trial the defendants sought to prove that the former owners of the Smoke-house claim, and while so the owners thereof, and knowing that said claim would be within the boundaries of the proposed town site of Butte, joined others in petitioning the probate judge to enter said town site for a patent, and in accordance therewith the town site was patented, and the owners of the Smoke-house claim accepted from the probate judge deeds to lots on said claim; and that these owners declared that they would not interpose or assert their title to this mining claim, or any rights thereunder, as against the town site patent, or those claiming under the same. This testimony was rejected, and error assigned accordingly.

All these matters alleged as an estoppel took place and were in existence before the time that respondents made their application for a patent to the Smoke-house claim. If they were estopped at all, they were estopped from applying for or receiving a patent. Subsequent to these alleged acts and declarations, the owners of the Smoke-house claim took the necessary steps for procuring a patent thereto. In order to do so, they filed their application as the law required in the proper land office, showing a compliance with the laws, together with a plat and the field-notes of their claim, made by and under the direction of the surveyor-general of the United States for Montana, showing the boundaries of their claim, and they also, previously to the filing of the application, posted a copy of the plat, with a notice of their intended application, in a conspicuous place on the claim. When such application was filed in the land office, the register published a notice that such application had been made, for the period of sixty days, in a newspaper nearest to such claim; and also posted a notice in his office for the same period. It is a conclusion from the issuing of the patent that all these requirements were complied with in making their application. *Steel* v. *Smelting Co. supra.*

The object of this exceeding care and publicity in applying for a patent for a mining claim is to give notice to any and all adverse claimants that such application has been made, in order to give them an opportunity to contest in the manner provided by law, and before a court of competent jurisdiction, the applicant's right to a patent for the ground he claims. The conclusiveness of the title by patent grows out of the fact that this opportunity has been given to all adverse claimants to contest the right of the patentee. The theory of the law is that, unless the adverse claimant sets up his title, and controverts the right of the applicant for a patent during the period prescribed for this purpose, he thereby loses his right or title, whatever it may be, and cannot thereafter assert the same. Therefore, if the respondents were not entitled to a patent for the Smoke-house claim for the reason that they were estopped from

applying for and demanding the same, an adverse claim by appellants would have made this fact to appear, and defeated their application.

After the posting of the plat on the claim, and during the period of publication of notice, all adverse claimants are charged with notice of the application, and if they let this period pass without objecting to the issuance of the patent, if they stand by and do not make known their adverse claim or title, they are estopped from thereafter attacking the patent for any cause that existed at the date of the application. Objections that ought to have been made to the issuance of a patent cannot be made after the same is issued, except in certain well-defined cases, as that the land had been previously sold, or that the land department had exceeded its jurisdiction. The respondents might well have signed a petition to the probate judge, asking that he enter the town site for a patent, and been active in procuring the same; for they knew that such a patent could not in any manner affect their title to the Smoke-house location, which existed as a grant from the government in their favor, prior to the application for the town site patent, and prior to the time they signed a petition therefor. They knew, and so did the appellants, that the act authorizing the issuance of the town site patent forbade the acquisition of title to any mine, mining claim, or possession within the boundaries of the town site, by virtue of such patent.

No one could have been deceived by the act of the owners of the Smoke-house claim in signing a petition for, or taking an active part in procuring, the town site patent. And if such owners accepted deeds from the probate judge for lots included within the Smoke-house location, they received deeds for land that they already had a title to, and no one was deceived or injured thereby. And if they declared that they would make no claim by virtue of their Smoke-house location, still the location remained a valid mining claim, to which the appellants and no one else

could acquire any title by virtue of the town site patent. Their declaration did not repeal the act of congress, which declares that no town site patent shall convey any interest in or to any mine, mining claim, or possession. It did not change a valid mining claim into a town site. It did not authorize to be done what the government under the law could not do; and it does not appear that the appellants were, in any manner, induced to act upon such declarations to their injury or otherwise. It does not appear that one solitary act has been performed by any one in consequence of these declarations, nor that they were made with the intent that any one should act upon them. Unless the declaration ór representation is acted upon, an estoppel cannot arise.

The judgment in each of the three cases named is affirmed, with costs in each.

*Judgment affirmed.*

GALBRAITH, J., concurred.