King and others, respondents, *v.* Thomas et al., appellants. Same *v.* McCauley et al. Same *v.* Kingsbury et al.

Mining Claim — *Silver King mining claim — Not affected by Butte town site patent.* — The facts being on all-fours with the facts in *Murray* v. *Buol, ante,* p. 397, both as to the town site patent and the mineral patent, *held,* following those cases, that the town site patent to Butte City does not cover the mineral ground included within the limits of the Silver King lode, but that the said lode is expressly reserved from the operation of the same by the terms of the patent itself, and by the act of congress, and that the exceptions made by the mineral patent

are unauthorized by law and void, and that the Silver King patent conveys a perfect title to the surface ground in controversy, to which the defendants have no claim whatever.

SAME — *Statute of limitations* — *Mining claim* — *Issue of patent.* — The statute of limitations cannot run against a mining claim until the patent thereto has been issued, any state or territorial legislation to the contrary notwithstanding.

*Appeal from Second District, Silver Bow County.*

THREE ACTIONS in ejectment. Judgments for plaintiffs King and others. Defendants appeal.

KNOWLES & FORBIS, for Thomas and others, appellants.

WM. SCALLON, for King and others, respondents.

McLEARY, J. These three cases were argued and submitted together, and really involve the same questions, except in the last case the defendants, Kingsbury *et al.*, do not insist on the statute of limitations, having offered no evidence in support of that plea.

The facts may be briefly stated as follows: The application for the Butte town site patent was made on the 10th day of June, 1876, and the final entry for such town site was made on the 25th day of July, 1876, and the town site patent was issued upon such application and entry, and was dated September 26, 1877. The respondents claim title to the premises in controversy under and by virtue of the Silver King quartz-lode location, made on the 14th day of March, 1877, and upon which location patent was issued on the 13th day of September, 1881. The land in question is covered by the Silver King quartz-lode claim, and lies within the corporation and town site of Butte, and is laid off into streets and alleys, lots and blocks; and some of the lots are improved, and have been occupied since the years 1878 and 1881. The court below, after a trial by jury and verdict for the plaintiffs, rendered judgment in favor of the plaintiffs, and from this judgment the defendants appeal.

The questions raised in the court below, and in this court, are the following: *First*, what is the proper construction of the patent for the town site of Butte? *Second*, what is the proper construction of the patent of the Silver King quartz-lode mining claim? *Third*, had the defendants the right to prove, by extrinsic evidence, that the lands embraced within the boundaries of the town site patent were not mineral in their character? *Fourth*, if the defendants have not a good title under the town site patent, have they had possession of the-premises long enough to bar the action under the statute of limitations?

The construction of the town site patent and the mineral patent may be considered together; and for a correct interpretation of them it is scarcely necessary to do more than to refer to the opinion of this court just read in the cases of *Murray* v. *Buol, ante,* p. 397, and the thirty-two other cases commonly called the "*Smoke-house Lode Cases.*" In that opinion, the whole case in all its branches has been carefully reconsidered, and the case of *Silver Bow M. & M. Co.* v. *Clark,* 5 Mont. 406, and the case of *Talbot* v. *King,* 6 Mont. 76, have been carefully reviewed.

The cases of *Deffenback* v. *Hawke,* 115 U. S. 392, and *Sparks* v. *Pierce,* 115 U. S. 412, in which the same doctrines are announced, have been carefully compared with the cases cited from the previous decisions of this court, and it is believed that the Montana cases have been virtually sustained by the supreme court of the United States. The town site patent, in all these cases referred to as heretofore decided by this court, is the same,— that of the city of Butte. The mineral patents, being those of the Pawnbroker lode and the Smoke-house lode, are entirely similar to that of the Silver King lode. Then the conclusion inevitably follows that the town site patent does not cover the mineral ground included within the limits of the Silver King lode, but that the same is expressly reserved from the force of the same by the terms of the patent itself, and by the act of congress, and that the exceptions made

by the mineral patent are unauthorized by law and void, and that the Silver King patent conveys a perfect title to the surface ground in controversy, to which appellants have no claim whatever.

Ought the court to have permitted the defendants, who are here appellants, to prove by extrinsic evidence that the lands embraced within the town site patent were not mineral in their character? All the cases hereinbefore cited decide this question in the negative. If this fact could have been proven, the time to make such proof was before the patent to the mining claim was issued. This fact had to be determined by the proper authorities before the patent could be issued; and having once been determined, and the mining patent issued, that document is conclusive evidence of the mineral character of the lands which are included within its limits. This question, since the decision of the *Pawnbroker Case* in 1885 (5 Mont. 406), has not been an open one in this territory. We do not feel inclined to disturb that decision, and those which have confirmed it on this point.

This brings us to the fourth question, which is the statute of limitations.

It is insisted by the appellants that the statute of limitations began to run with the issuance of the patent for the town site of Butte, on the 26th of September, 1877. It is contended by the respondents that the statute of limitations did not begin to run until the issuance of the patent for the Silver King mine, on the 13th day of September, 1881. The complaints were filed on the 10th day of September, 1885, and the statute of limitations runs in five years. R. S. Mont. div. 1, tit. 3, chs. 1, 2, pp. 45, 46. So that it appears that if the position insisted upon by the appellants is correct, the action is barred; and, on the contrary, if that assumed by the respondents is correct, the running of the statute was arrested in time by the filing of the suit. The appellants also claim that the statute of limitations was set in motion by the location of the mining claim, which, as we

have seen, was on the 14th of March, 1877, and accordingly that the action was barred. Appellants Thomas *et al.* offered to prove possession of the land in controversy since 1878. Appellants McCauley *et al.* offered to prove possession of the land in controversy since 1881. As has been heretofore stated, the appellants Kingsbury *et al.* do not claim under the statute of limitations, having offered no evidence under that plea.

The evidence offered by the defendants McCauley *et al.* is not sufficient, since occupation since the year 1881 would not be long enough to bar an action commenced in 1885 (R. S. div. 1, §§ 33–36); so the position assumed by the appellants applies only to the first case, and in behalf of Thomas *et al.*

Did the statute of limitations begin to run with the issuance of the town site patent? That patent, as before stated, contains the following express reservation: "No title shall hereby be acquired to any mine of gold, silver, cinnabar or copper, or to any valid mining claim or possession held under existing laws of congress." The Silver King location was a "valid mining claim, held under existing laws of congress," and was, by the very terms of the town site patent, excluded from its operation and effect. Then, certainly, as to this mining ground, the town site patent could not afford a basis for the statute of limitations, nor set the same in motion.

: The cases referred to by counsel for appellant on this point (*Meehan* v. *Forsyth,* 24 How. 175; *Dredge* v. *Forsyth,* 2 Black, 563) are not analogous to the case at bar. In one of these cases the supreme court says: "Fee-simple title is granted to the patentee, and his heirs, of the described tract, to have and to hold the same, together with all the rights, privileges, immunities and appurtenances, subject, however, to the rights of any and all persons claiming under the before-mentioned acts of congress. Looking at the language of the patent, it is clear that the saving clause was designed merely to exonerate the United States from

any claim of the patentee, or his assigns, in the event that any other person should prove a superior title." 2 Black, 570.

This is not the case here. The mining ground is expressly excluded from the force and effect of the patent, not only by the language of the patent itself, but also by the act of congress. R. S. U. S. § 2392. But the respondents appear to be correct in the position that the statute of limitations did not begin to run until the issuance of the mining patent. The statute of the territorial legislature cannot interfere with "the primary disposal of the soil" (R. S. U. S. § 1851); and it is for this reason that it has been held in so many cases that the patent must issue before the statute of limitations is set in motion.

In a well-considered case the supreme court of the United States says: "With respect to the public domain, the constitution vests in congress the power of disposition, and the making of all needful rules and regulations. That power is subject to no limitations. Congress has the absolute right to prescribe the times, the conditions, and the modes of transferring this property, or any part of it, and to designate the persons to whom the transfer shall be made. No state legislation can interfere with this right, or embarrass its exercise; and, to prevent the possibility of any interference with it, a provision has usually been inserted in the compacts by which new states have been admitted into the Union, that such interference with the primary disposal of the soil of the United States shall never be made. Such provision was inserted in the act admitting Missouri, and it is embodied in the present constitution, with the further clause that the legislature shall not also interfere ' with any regulation that congress may find necessary for securing the title in such soil to the *bona fide* purchasers.' The same principle which forbids any state legislation interfering with the power of congress to dispose of the public property of the United States, also forbids any legislation depriving the grantees of the United States of the possession

of and enjoyment of the property granted, by reason of any delay in the transfer of the title after the initiation of proceedings for its acquisition. The consummation of the title is not a matter which the grantees can control, but one which rests entirely with the government. With the legal title, when transferred, goes the right to possess and enjoy the land; and it would amount to a denial of the power of disposal in congress, if these benefits, which should follow upon the acquisition of that title, could be forfeited, because they were not asserted before that title was issued." *Gibson* v. *Chouteau*, 13 Wall. 99, 100. The same doctrine is announced and referred to in the following cases: *Henshaw* v. *Bissell*, 18 Wall. 269, 270; *Manly* v. *Howlett*, 55 Cal. 98; *Hagar* v. *Speck*, 48 Cal. 408; *Gardiner* v. *Miller*, 47 Cal. 570.

The authorities above cited settle the proposition of the appellants, that the statute began to run against the mining claim from its location, and decide it adversely to the position assumed. The law imposes on the miner certain duties and obligations necessary to be performed before a patent can issue, and certain delays are indispensable in the performance of these preliminary requisites; and after all has been done that can be done by the mining claimant, the consummation of the title rests entirely with the government. For these very sufficient reasons the statute of limitations does not begin to run against him from the date of his location, but only after the patent has issued, and the government has finally disposed of the soil, and the miner has become the absolute owner thereof. Then the appellants cannot claim to defeat this action on the plea of the statute of limitations.

The judgment of the district court having been rendered in full accord with the former decisions of this court, and being in all things correct in principle, it is in each case hereby affirmed.

*Judgment affirmed.*

WADE, C. J., and BACH, J., concur.