MAYER ET AL., RESPONDENTS, *v.* CAROTHERS ET AL., APPELLANTS.

[Submitted February 24, 1893. Decided March 26, 1894.]

MINES AND MINING—*Statute of limitations.*—The statute of limitations does not commence to run against a mining claim until the issuance of a patent therefor. (*King* v. *Thomas,* 6 Mont. 409, affirmed.)

NONSUIT—*Directing verdict.*—Where an equitable defense is pleaded to an action of ejectment, and the court peremptorily directs the jury to find for the plaintiff, such direction is, in effect, a nonsuit of defendant's defense, and, therefore, whatever defendant's testimony tends to prove as to such defense must be taken as proved. (*McKay* v. *Montana Union Ry. Co.,* 13 Mont. 15; *Creek* v. *McManus,* 13 Mont. 152, cited.)

SAME—*Ejectment—Equitable defense—Estoppel.*—Where town lots situated upon a patented mining claim are claimed by defendants through conveyances from one who assumed title thereto under an arrangement by which the residents of a mining gulch, at a meeting held for that purpose, resolved to lay off a townsite, and, among other things, provided that each person might take up two lots—the fact that one of plaintiff's grantors attended such meeting and took part·in the proceedings, and another took up town lots pursuant thereto, does not create an equitable defense to an action of ejectment brought by the patentees of such claim to recover possession of the portions covered by the lots in controversy. (*Talbott* v. *King,* 6 Mont. 76, cited.)

*Appeal from Sixth Judicial District, Meagher County.*

EJECTMENT to recover possession of town lots upon the surface of a mining claim. The cause was tried before HENRY, J. Plaintiffs had judgment below. Affirmed.

*Toole & Wallace,* for Appellants.

I. The court erred in excluding evidence of the adverse possession of defendants and their predecessors in interest prior to the issuance of the patent. After the receipt of the payments for the land and issuance of the receiver's certificate, the United States held the bare, naked, empty title, and the holder was the sole beneficiary in the premises described in it. (Comp. Stats., § 542, p. 202; *Herron* v. *Dater,* 120 U. S. 464; *United States* v. *Freyburg,* 32 Fed. Rep. 195; *Hamilton* v. *Southern etc. M. Co.,* 33 Fed. Rep. 562; *Dahl* v. *Montana Copper Co.,* 132 U. S. 264.) The statute always runs against the *cestui que trust* of a perfect equitable title. (Tiedeman on Real Property, § 715; *Udell* v. *Peak,* 70 Tex. 547; *United States* v. *Beebe,* 127 U. S. 338, in connection with 1 Am. & Eng. Ency. of Law, § 12, pp. 243, 244.) The statutes of Montana have provided how plaintiffs could lose the right to the possession of these town lots, and they have lost it. Even if they could invoke the aid of the United States for their protection, the courts apply the doctrine of laches, when the party seeking to recover is the sole beneficiary. (*Cawley* v. *Johnson,* 21 Fed. Rep. 492; *Hunnicutt* v. *Peyton,* 102 U. S. 368.) In those forms where an equitable title will support or defeat an action of ejectment, the statute will run against such equitable title. (*Moreland* v. *Barnhart,* 44 Tex. 275; *Wright* v. *Hawkins,* 28 Tex. 471; *Cawley* v. *Johnson,*

21 Fed. Rep. 492; *Astrom* v. *Hammond,* 3 McLean, 107; *Peting* v. *De Lore,* 71 Mo. 13; *Hannibal etc. R. R. Co.* v. *Clark,* 68 Mo. 371; *Norris* v. *Moody,* 84 Cal. 143; *Wilson* v. *Fine,* 14 Saw. 38; 38 Fed. Rep. 789, and authorities.) The local laws of the state are distinctly recognized in possessory actions, so far as mining claims are concerned, and the statute runs in all courts, and the legal title in the United States is of no consequence, because ejectment is maintainable. (U. S. Rev. Stats., §§ 910, 914, 1850, 2322, 2324, 2326; *Campbell* v. *Silver Bow etc. Co.,* 1 C. C. of App. Rep. 155; 49 Fed. Rep. 47; *Belk* v. *Meagher,* 3 Mont. 65; U. S. Stats. 1891, § 16, p. 1101, 2d Sess., 51st Congress.) It is the cause of action against which the statute runs, and it is set in motion as soon as the cause of action accrues. (Pomeroy's Equity Jurisprudence, §§ 1396, 1397, note 3, 1405; *Lewis* v. *Soule,* 52 Iowa, 11, 13; *Stearns* v. *Palmer,* 10 Met. 35; Tiedeman on Real Property, § 715; *Roper* v. *Holland,* 3 Ad. & E. 99; 1 Am. & Eng. Ency. of Law, § 12, pp. 243, 244, note 1, and authorities cited; Comp. Stats., § 29, p. 65; *Fancoeur* v. *Newhouse,* 43 Fed. Rep. 241, 242.) And section 39, pages 67 and 68, of the Compiled Statutes show the only exception to the above rule. (Angell on Limitations, 381, 382, 476, 478, 485; *Tynan* v. *Walker,* 35 Cal. 634; 95 Am. Dec. 152; *Woodbury* v. *Collins,* 19 Wis. 60.) So a title, easement, or servitude, acquired under the statute, is absolute and sufficient upon which to base affirmative relief. (*Arrington* v. *Liscom,* 34 Cal. 365; 94 Am. Dec. 722; *Leffingwell* v. *Warren,* 2 Black, 599, 601.) Suppose that the plaintiffs had leased the property for years, and the lessee was in possession when the patent was received by the lessor, would they not be estopped from evicting the lessee on account of his lease? Again, suppose that plaintiff had executed a mortgage upon his right and title to the property, after his certificate had issued, and it had been foreclosed and sold, and the equity of redemption had expired, would the receipt of the patent thereafter cut off the rights of the purchaser and authorize a recovery in ejectment by the patentee? And again, taking the case as it is, being likewise a title acquired under the statute, does the subsequent issuance of the patent reinvest the patentee with a right of possession he has lost under the local

laws?  Is it not by force of the local statute that this right is lost in the one case as much as the other, and does not the loss of the right in the one affect the question of the primary disposal of the soil as much as the other?  Hence section 2322 of the United States Revised Statutes, granting to the locator, his "heirs and assigns," the exclusive right to the possession of a mining claim, so long as he complies with the local and federal statutes, subjects it to a claim less than a fee, that accrues not only on account of a conveyance, devise, etc., but includes those acquiring rights therein by "other acts of law." (Rapalje and Lawrence's Law Dictionary, title "Assignee.") The rights of defendants are through and under the grantors of plaintiffs, and the plaintiffs are affected by those rights. They are, in the sense of the statute, "assignees" of the locator on account of which the rights of plaintiffs are affected.  In this section assignee, in our judgment, means a successor to the interest of the locator, which under the law accrues to an adverse holder for the period of the statute of limitation.  It must mean a lawful successor to the interest of the locator to subserve the purpose of the statute, else it is exempt from sale upon execution, or the operations of law by which that title passes.  (*Baily* v. *De Crespigny*, L. R. 4 Q. B. 186; *Brown* v. *Crookston etc. Assn.*, 34 Minn. 545; Anderson's Law Dictionary, title "Assigns," 82.)  So that "assigns," used in connection with "heirs" before the patent, and referring to rights acquired by location, comprises in law a successor to the interest of the locator.  It is, therefore, not an attempt on the part of the state to enlarge the grant, so as to include assigns not otherwise included, but is a provision contained in the act of Congress disposing of the public domain.

II.  The court erred in directing the jury to return a verdict for the plaintiffs under the facts in evidence before them. The question is no longer an open one, that the court acts as a special tribunal, under section 2326 of the United States Revised Statutes, for the sole purpose of determining who is entitled to a patent, and cannot exercise its general common law and equity powers in adjusting and determining any other question than that expressly submitted to it.  The equitable right of possession as between the applicant, or a legal right

thereto, growing out of a lease or other contract relations, cannot legitimately enter into the issues to be submitted, but the right of possession referred to is a right which carries. with it a right to a patent, leaving all others, at least of an equitable character, to be adjusted in a proper forum, *ex post facto* the patent. The judgment is limited to the facts submitted, and is only *res judicata* as to them. The judgment is the basis of the patent, and the patent is only conclusive of the facts upon which that judgment is or can be based. Hence it is, we find the courts holding that these equitable rights between the parties are open for adjudication, notwithstanding the patent. (*Doe* v. *Waterloo M. Co.*, 43 Fed. Rep. 219, 221; *Hunt* v. *Putchin*, 35 Fed. Rep. 816; *Sussenbach* v. *First Nat. Bank*, 5 Dak. 477; *Doherty* v. *Morris*, 11 Col. 12; *Marquez* v. *Frizbie*, 101 U. S. 473; *Johnson* v. *Towsley*, 13 Wall. 72; *Shepley* v. *Cowan*, 91 U. S. 330; and especially *Rector* v. *Gibbon*, 111 U. S. 276; *Irvine* v. *Marshall*, 20 How. 558; *Burlington etc. R. R. Co.* v. *Johnson*, 38 Kan. 142.) It is now settled law that there may be two freeholders in the same body of earth, measured superficially and perpendicularly down towards the center of the earth, to which theoretically the unlimited ownership of the soil extends. (Washburn on Easements and Servitudes, 558; *Wilkinson* v. *Proud*, 11 Mees. & W. 33; *Rowbotham* v. *Wilson*, 8 El. & B. 123, 142; *New Jersey Zinc Co.* v. *New Jersey Franklinite Co.*, 13 N. J. Eq. 341, 342; MacSwinney on Mines, 26, 268.) The presumption of ownership to the center of the earth arising from ownership of surface may be rebutted by evidence of long, actual, separate enjoyment of the surface and the mines of different owners. (MacSwinney on Mines, 27; *Humphries* v. *Brogden*, 12 Q. B. 739; *Rowe* v. *Greenfel*, Ryan & M. 398; *Curtis* v. *Daniel*, 10 East, 273; *Barnes* v. *Mawson*, 1 Maule & S. 84; *Cox* v. *Glue*, 5 Com. B. 548.) No presumption of surface ownership arises from the fact of ownership of mines. (MacSwinney on Mines, 26; *Tyrwhitt* v. *Wynne*, 2 Barn. & Ald. 554; *Marshall* v. *Ulleswater etc. Co.*, 3 Best & S. 748.) The right of property in the surface and in the underlying mines may be shown to be in different hands. (MacSwinney on Mines, 27; *Rich* v. *Johnson*, 2 Strange, 1142; *Rowe* v. *Greenfel*, Ryan & M. 398;

*Hodgkinson* v. *Fletcher*, 3 Doug. 34; *Harris* v. *Ryding*, 5 Mees. & W. 72; *Cox* v. *Glue*, 5 Com. B. 548; *Keyse* v. *Powell*, 2 El. & B. 144.) If the grantors of defendants held an available title to the surface in law or equity against the grantors of plaintiffs, it is available in the action against plaintiffs. 1. Because the jury did not have an opportunity to pass upon the notice of defendants and their grantor's equities, as set up in their answer, on account of which, for the purposes of this trial, it must be assumed they had such notice, and that such equities existed. 2. The actual possession and occupancy established by defendants, in themselves and predecessors in interest, which must be regarded as a fact (the instruction shutting it out from the jury), was notice of all their rights and equities, whatever they may have been. (Code Civ. Proc., 33–36; *Hughes* v. *United States*, 4 Wall. 232; and see authorities cited under subdivision 6, which are alike applicable here.) 3. The acts and declarations of McCure and Sutton, aside from the question of possession, while holding the Keegan Lode claim, were competent, and binding upon plaintiffs as their grantees. (Code Civ. Proc., §§ 620, 621; MacSwinney on Mines, 26; *Crease* v. *Barrett*, 1 Cromp. M. & R. 919; *Stanley* v. *Green*, 12 Cal. 148.) 4. If sufficient in such case to raise an equity against the grantors of plaintiffs, it is available against plaintiffs also. (*Bryan* v. *Ramirez*, 8 Cal. 461; 68 Am. Dec. 340; *Stanley* v. *Green*, 12 Cal. 148; *Snodgrass* v. *Rickitts*, 13 Cal. 359; *Carpentier* v. *Thirston*, 24 Cal. 268.) 5. The acts of McCure constituted a donation of the property, and the donee entering and fencing, in accordance with the terms, could not afterwards be evicted by the donor or his successor, with notice of such facts as would put a reasonable person upon inquiry. (*Story* v. *Black*, 5 Mont. 26; 51 Am. Rep. 37; *Hughes* v. *United States*, 4 Wall. 232; *Landes* v. *Brant*, 10 How. 348; *McKinzie* v. *Perrill*, 15 Ohio St. 162, 168; *Jones* v. *Marks*, 47 Cal. 242; *Ray* v. *Birdsey*, 5 Denio, 626; Wade on Notice, §§ 273, 279; *Williamson* v. *Brown*, 15 N. Y. 355; *Harris* v. *Arnold*, 1 R. I. 125; *Rees* v. *Smith*, 1 Ohio, 127; 13 Am. Dec. 599; *Rogers* v. *Jones*, 8 N. H. 264; *Havens* v. *Bliss*, 26 N. J. Eq. 363; *Wickes* v. *Lake*, 25 Wis. 71; *McLaughlin* v. *Shepherd*, 32 Me. 143; 52 Am. Dec. 646; *Bailey* v. *White*, 13

Tex. 114; *Davis* v. *Hopkins*, 15 Ill. 519; *Lea* v. *Polk County Copper Co.*, 21 How. 493; *Shumate* v. *Reavis*, 49 Mo. 333; *Morton* v. *Robards*, 4 Dana, 258; *Macon* v. *Sheppard*, 2 Humph. 335.) Besides, plaintiffs in their replication, if they claimed the benefits of a *bona fide* purchaser, must set up not only a want of notice, but a want of information of any and all facts that would put them upon inquiry, or from which notice could be implied. (*Boone* v. *Chiles*, 10 Pet. 177 (211); *Byers* v. *Fowler*, 12 Ark. 218; 54 Am. Dec. 286; 2 Estee's Pleading and Practice, 605; *Manhattan Co.* v. *Evertson*, 6 Paige, 457; *Wood* v. *Mann*, 1 Sum. 506; *Woodruff* v. *Cook*, 2 Edw. Ch. 259; *Padgett* v. *Lawrence*, 10 Paige, 170; 40 Am. Dec. 232; *Gallatian* v. *Cunningham*, 8 Cow. 361; *Donaldson* v. *Bank*, 1 Dev. Eq. 103; 18 Am. Dec. 577; *Snelgrove* v. *Snelgrove*, 4 Desaus. 274; *Rowan* v. *Adams*, 1 Smedes M. & Ch. 45; *Powell* v. *Jeffries*, 4 Scam. 387; *Griffith* v. *Griffith*, 9 Paige, 315; *Frost* v. *Beekman*, 1 Johns. Ch. 288; *Leftwich* v. *Orne*, 1 Freem. Ch. 207; *Scott* v. *Evans*, 1 McLean, 486; *Oliver* v. *Piatt*, 3 How. 333; *Baldwin* v. *Johnson*, 1 N. J. Eq. 441; *Dresser* v. *Missouri etc. Co.*, 93 U. S. 92; *Lloyd* v. *Lynch*, 28 Pa. St. 419; 70 Am. Dec. 137; *Bolton* v. *Johns*, 5 Pa. St. 151; 47 Am. Dec. 404.) 6. The defendant had knowledge of her grantor's title, and of what had transpired, and the acts of the other co-owner (Sutton), in taking lots under the donation made by his co-owner (McCure), are only reconcilable with an adoption and ratification of them. He received the benefits by taking and selling the lots, and cannot repudiate what was done, by which he was thus benefited. The acts and declarations of the co-owner in donating being binding on him, the acceptance and recognition of those acts became an adoption and ratification thereof, and the improvements put upon the premises thereafter by defendants created an available equity against both McCure and Sutton. (*Borel* v. *Rollins*, 30 Cal. 408; *Gold Mining Co.* v. *National Bank*, 96 U. S. 644, 645.) Because, upon the general principles of agency, the receipt of the benefits and acting under what was done was an adoption of the act. (*Starr* v. *Stark*, 2 Saw. 604; Mecham on Agency, § 148; Wharton on Agency and Agents, § 89.) The donation by McCure, and acts of the donee in pursuance of it, constituted

irrevocable contract relations, and the entry and sale of lots by Sutton, in conformity with the donation, estops him from denying the obligations created by it as co-owner and successor in interest of McCure. (*Wiggins Ferry Co.* v. *Ohio etc. Ry. Co.*, 142 U. S. 396, 408, 409; *Frelinghuysen* v. *Nugent*, 36 Fed. Rep. 230; *Albright* v. *Emery*, 109 U. S. 651, 653; *Porter* v. *Wormser*, 94 N. Y. 450.) Defendant purchasing the town lots as such, with knowledge of the title under which they were held, and acting and claiming under no other title, will be presumed to have placed the improvements upon the premises upon the strength of that title, if not conclusive evidence of that fact, and the adoption of the acts of McCure by Sutton's actions, which are only reconcilable with such adoption, under such circumstances likewise bind him as well as McCure. (*State Bank* v. *Hastings*, 15 Wis. 90, and cases there cited; *Midland R. R. Co.* v. *Hitchcock*, 37 N. J. Eq. 549; *Wiggins Ferry Co.* v. *Ohio etc. Ry. Co.*, 142 U. S. 408, 409; 2 Pomeroy's Equity Jurisprudence, § 965.) The whole population of Neihart, it seems, was apprised of the action of the claim owners, and the deeds to plaintiffs, not being deeds of general warranty, placed them at all events outside the pale of *bona fide* purchasers. (Rev. Stats., § 329, p. 104; *May* v. *Le Claire*, 11 Wall. 232; *Runyon* v. *Smith*, 18 Fed. Rep. 579; Wade on Law of Notice, § 204; *Hutchinson* v. *Harttmann*, 15 Kan. 133; *Marshall* v. *Roberts*, 18 Minn. 405; 10 Am. Rep. 201; *Stoffel* v. *Shroeder*, 62 Mo. 147.) Plaintiffs should not be allowed to repudiate the acts and declarations of their grantors, or ignore their own.

*H. G. McIntire,* for Respondents.

I. It would seem no longer an open question that as to portions of the public domain the statute of limitations of the state wherein the same are situated does not begin to run until the full legal title passes from the United States to its grantee; and that such legal title does not pass until the patent is issued. This is the doctrine of the supreme court of the United States, which, of course, on a question of such a nature, is paramount. (*Gibson* v. *Chouteau*, 13 Wall. 99; *Redfield* v. *Parks*, 132 U. S. 241; *Steele* v. *Boley*, 7 Utah, 64, which overrules the same case

in 6 Utah, 376; *Anzar* v. *Miller*, 90 Cal. 342, which overrules the *dictum* of Justice Fox in *Norris* v. *Moody*, 84 Cal. 143; *King* v. *Thomas*, 6 Mont. 409; *Nessler* v. *Bigelow*, 60 Cal. 98.) Appellants contend, however, that inasmuch as a perfect, equitable title vested in plaintiffs when they obtained the receiver's receipt for the land in question, and that the United States was the holder of the naked, legal title only, and that inasmuch as ejectment may be predicated upon such equitable title, that therefore the statute began to run from the date of such receiver's receipt. Precisely the same argument was advanced in the numerous cases in the state courts where the same point was involved. However persuasive such argument may be it cannot be followed. When the United States gives a patent to a man it gives some thing more than a mere piece of paper; it gives also the right to possess and enjoy the land described in the patent. "With the legal title, when transferred, goes the right to possess and enjoy the land, and it would amount to a denial of the power of disposal of Congress if these benefits, which should follow upon the acquisition of that title, could be forfeited because they were not asserted before that title was issued." (*Gibson* v. *Chouteau*, 13 Wall. 100.) The case at bar is clearly within the principle announced in *Sparks* v. *Pierce*, 115 U. S. 412; *Pierce* v. *Sparks*, 22 N. W. Rep. 491 (Dak., Feb. 6, 1885).

II.   But counsel for appellants seek to educe a different rule in the case at bar because the premises in dispute are a portion of the mineral lands of the United States; and while conceding that there can be no question of the statute beginning to run only on the issuance of a patent for agricultural lands, that as regards mineral lands it begins to run from the date of the receiver's receipt. It is submitted that this is a distinction without a difference. It is true that the locator of mineral lands has a much greater control over his claim than has an agricultural entryman, prior to final entry, over an agricultural claim; but after such final entry, after the issuance of the receiver's receipt for the entry money, the rights of the agricultural entrymen are fully as broad and comprehensive as those of the mineral claimant. He can dispose of the land; it can be seized under legal process against him; it is subject to

taxation; he has nothing further to do to perfect his title than to receive the patent therefor; he is the owner of the full equitable title; the United States are the holders of the dry, legal title merely in trust for him; his entry "is equivalent, so far as the government is concerned, to a patent actually issued.     The execution and delivery of the patent after the right to it has become complete are the mere ministerial acts of the officers charged with that duty." (See cases cited in *Steele* v. *Boley*, 6 Utah, 376.) And yet with such a title as this, as we have seen in the cases cited, *supra*, the unquestioned rule is that the statute runs not from the date of the receiver's receipt, but from the date of the patent. But we are not without direct authority that as to mineral lands the statute begins to run only from the date of the patent. Precisely the same point was squarely raised and so decided in *King* v. *Thomas*, 6 Mont. 409, and in *Nessler* v. *Bigelow*, 60 Cal. 98, and is involved in *Sparks* v. *Pierce*, 115 U. S. 412. A *fortiori*, if the statute does not begin to run at the date of the receiver's receipt, it does not run from the date of the location of the claim.

III.     *King* v. *Thomas*, 6 Mont. 409, was decided in 1887; the rule there announced was a deliberate judicial decision concurred in by all the court; it is safe to say that it has become a rule of property, that many and important rights have grown out of the same, and even, therefore, if this court should doubt its correctness, it at least should follow it under the doctrine of *stare decisis*. (*Pioche* v. *Paul*, 22 Cal. 106; *Smith* v. *McDonald*, 42 Cal. 484.)

IV.     As to the so-called equitable defense.     It is apparent, both from the plea in the answer and the testimony adduced on the trial, that defendants were not basing their alleged equitable title upon any title dependent upon that of the plaintiffs, but upon a hostile and adverse one, the contention being not only that plaintiffs never owned the lots in dispute, but that even if they had owned them, such title as they had had passed from them to defendants by virtue of their adverse possession under the statute of limitations. This being so, it would follow that not having asserted such adverse claim at the time of the application for the patent to the Keegan lode under the United States Revised Statutes, section 2325, they

are now barred from asserting it. (*Shafer* v. *Constans*, 3 Mont. 369; *Mattingly* v. *Lewisohn*, 8 Mont. 260; *Butte City Smokehouse Lode Cases*, 6 Mont. 397; *Talbott* v. *King*, 6 Mont. 76; *Sparks* v. *Pierce*, 115 U. S. 412.) The authorities cited in appellant's brief are clearly distinguishable from this view. In those cases the claims which were held not necessary to assert under section 2325 of the United States Revised Statutes were such as were dependent upon, and not hostile to, that of the applicant for patent.

V. Appellants seem to claim that the form of the two deeds to plaintiffs is such as to "place them outside the pale of *bona fide* purchasers," possibly on the ground that they contain the words "remise, release, and quitclaim." There is nothing, however, to show that these words were intended to limit the estate conveyed by the words of grant, bargain, and sale. The evident intent of the grantors was to convey specific interests in the Keegan lode, to wit: Ten-twelfths and two-twelfths; and even if they were "quitclaim," pure and simple, they are sufficient to pass the interests conveyed, and would prevail over any older but unrecorded conveyance. (Comp. Stats., div. 5, §§ 260, 270; *Graff* v. *Middleton*, 43 Cal. 341; *Frey* v. *Clifford*, 44 Cal. 335.)

VI. The consensus of all the authorities is to the effect that in order to constitute notice or knowledge to the subsequent purchaser there must be a possession which is actual, open, visible, exclusive, uninterrupted, unambiguous, and inconsistent with the record title; it must be an occupation, a *possessio pedis;* the alleged equitable owner, either in person or by his agents or lessees, must be on the ground itself; the ground must be subject to his will and control; a vacant or constructive possession is wholly insufficient. An intending purchaser is bound to inquire only of those on the ground at the time of the purchase. (5 Lawson's Rights, Remedies, and Practice, 3831, 3832; Wade on Notice, §§ 288, 291; *McMecham* v. *Griffing*, 3 Pick. 149; 15 Am. Dec. 198; *Buck* v. *Holloway*, 2 J. J. Marsh. 180; *Boggs* v. *Varner*, 6 Watts & S. 469; *Meehan* v. *Williams*, 48 Pa. St. 238; *Campbell* v. *Brackenridge*, 8 Blackf. 471; *Ely* v. *Wilcox*, 20 Wis. 523, 531; 91 Am. Dec. 436; *Smith* v. *Yule*, 31 Cal. 180; 89 Am. Dec. 167; *Sanford*

v. *Weeks*, 38 Kan. 319; 5 Am. St. Rep. 748; *Taylor* v. *Central Pac. R. R. Co.*, 67 Cal. 615; Abbott's Trial Evidence, 716, 717.) Fencing a piece of land is not the actual possession or occupation which is essential. (*Wolf* v. *Baldwin*, 19 Cal. 306.) Nor can it be said that such an act is an unambiguous assertion of title, or that it is inconsistent with the record title. The testimony of defendants, wherein notice on the part of plaintiffs was sought to be charged, was wholly insufficient; nor was it in any way as broad as the allegations of the answer; so that if the court did not err in overruling the demurrer to the answer, neither did it err in holding such testimony insufficient to charge plaintiffs with fraud.

VII. Plaintiffs are not estopped from asserting their rights because of the erection by defendants of improvements on these lots. There was no privity between them and no inducements held out; defendants were trespassers from the start as against the rights of plaintiffs; and even if any explanation of plaintiff's nonaction were necessary, it is supplied by the fact that prior to the erection of any buildings the then husband of defendant Cornelia Carothers had sought and obtained permission from plaintiffs to build, and that defendants had not asserted an adverse title until shortly prior to the beginning of this suit.

VIII. Upon the state of facts of this case there was nothing to submit to the jury. If the case has been submitted, and the jury had brought in a verdict for defendants, the court would have been constrained to set it aside as being contrary to the evidence; to charge them, therefore, to find for plaintiffs was no error. (*Martin* v. *Ward*, 69 Cal. 129.)

DE WITT, J.—This is an action in the nature of ejectment. Plaintiffs recovered judgment. Defendants' motion for new trial was denied. From the order and the judgment defendants appeal. The subject of the action is described as lots 5, 6, 7, 8, and 9, in block 5, of the townsite of the town of Neihart. These lots are a portion of the surface of the Keegan mining claim. Plaintiffs became owners of this mining claim by mesne conveyance from the locators on June 30, 1884. On July 27, 1887, plaintiffs were granted a patent by the

United States for Keegan mining claim, in pursuance to an application made by them, and allowed April 4, 1885.

There are two points which are urged by appellants, and which we will examine. This action was commenced June 27, 1891. On the trial the defendants offered to prove facts tending to show an adverse possession of the premises in controversy for a period sufficiently long to bar the action, but a portion of such period was necessarily prior to July 27, 1887, the date of the issuance of the United States patent for the Keegan mining claim. The district court held that such testimony, showing adverse possession prior to the issuance of patent, was not competent, for the reason that the statute of limitations did not commence to run against a mining claim until the issuance of United States patent therefor. This ruling is assigned as error. The district court in this respect followed exactly the decision in *King* v. *Thomas*, 6 Mont. 409, in which case precisely the same point was decided, and in the same manner as in the case at bar. In fact, on this appeal we must, as to this point, affirm the district court, or we must directly overrule the doctrine of *King* v. *Thomas*, 6 Mont. 409. Indeed, the latter is what appellants' counsel, in a very able brief, ask us to do. But to reconsider *King* v. *Thomas*, 6 Mont. 409, would be to disturb a rule of decision and a principle as to titles of real property which are now of seven years' standing. The case of *King* v. *Thomas*, 6 Mont. 409, was decided in the year 1887. It is a matter of history in this state and in this court that at that time very many cases were tried and pending in which the plaintiffs were grantees in United States patents for mining claims, and the defendants were occupying portions of the surface of such claims for townsite purposes. There was great contention at that time in such cases as to how the statute of limitations should be applied as against lands held as mining claims; that is, whether the statute should begin to run at the date of the location of the claim, or at the date of the issuance of the final receipt from the land-office, or at the date of the issuance of patent. *King* v. *Thomas*, 6 Mont. 409, settled this contention, and announced the rule that has now been undisturbed for seven years. It must be that many contentions have been settled under this

doctrine, and that many titles to real estate have been governed thereby. When we regard the history of conflicts between mining claimants and townsite claimants in this state, the doctrine of *stare decisis* in regard to such titles appeals to the court with very great force. We feel at this time that we must decline to reconsider the case of *King* v. *Thomas*, 6 Mont. 409. Counsel refer to *Pioche* v. *Paul*, 22 Cal. 106, and *Smith* v. *McDonald*, 42 Cal. 484. See, also, *Hihn* v. *Courtis*, 31 Cal. 402; *Reed* v. *Ownby*, 44 Mo. 206; *Moore* v. *City of Albany*, 98 N. Y. 410; 1 Kent's Commentaries, 476; *Metcalf* v. *Prescott*, 10 Mont. 293.

The appellants urge a second point as follows: They pleaded and offered testimony on what they insist is an equitable defense. The offered testimony is as follows: In the spring of 1882 about fifteen or twenty people were in the gulch where the town of Neihart now is; on the 6th of April of that year a meeting of those citizens was held for the purpose of laying off a townsite; the Keegan was then a located mining claim; one of its owners, Paul McCure, attended the citizens' meeting, and took part in the proceedings. It was resolved at that meeting that the surface ground in the gulch be laid out for townsite purposes, and the town was named Neihart. From the minutes of that meeting, which were offered in evidence, it appears that the boundaries of said town were fixed; a recorder was appointed to lay out the town and keep a book of records of lots; the size of the lots and widths of the streets were defined, and it was resolved that one person could "take up" two lots only. These lots were "taken up," as it was called, by the recorder making an entry in his book, and transfers of claims seem to have been made in about the same way. In pursuance to the proceedings of this citizens' meeting, James L. Neihart filed upon, or "took up," the ground which is now in controversy. He sold to one Thompson, and Thompson, on August 3, 1884, sold the premises to the defendants, who have put valuable improvements on the same. The owners of the Keegan claim were aware of the proceedings of the citizens' meeting, and one of them, Sutton, took up two town lots in pursuance to the proceedings of said meeting.

The defendants submitted to the court an elaborate set of instructions. In view of the action taken by the court, and

set out below, it is not necessary to review these instructions further than to observe that they propose to submit the so-called equitable defense to the jury. The court refused all of these instructions, and submitted the case to the jury upon one instruction only, which is as follows: "The court instructs the jury that, under the evidence in this case, the defendants cannot recover in this action; your verdict must therefore be for plaintiffs."

We must here turn aside from this alleged equitable defense, and examine for a moment a question of practice as to the action of the court just described. Defendants contend that the action of the court in so peremptorily instructing the jury was, in effect, a nonsuit of defendants as to the equitable defense, but that no motion for a nonsuit was made, and that therefore, although the effect of the action was a nonsuit, yet the defendants were not in a position to apply the rules governing a nonsuit; that is, defendants contend that, instead of nonsuiting their equitable defense, the court took the verdict of the jury thereupon. But in the view that we have heretofore taken of the nature of a direction by the court to find a verdict, we are of opinion that defendants were not injured by the action of the court. When upon a trial the court peremptorily directs a jury to find for the defendant, this is in effect granting a nonsuit against plaintiff, and must be treated as such. (*McKay* v. *Montana Union Ry. Co.*, 13 Mont. 15; also *Creek* v. *McManus*, 13 Mont. 152.) There seems to be no reason why the ruling of a nonsuit against plaintiff should not be applied to what is in effect a nonsuit of defendants' defense. Therefore, in this case, when the court peremptorily directed the jury to find for the plaintiff, it practically nonsuited defendants as to their equitable defense. Therefore the rules and principles applicable to a nonsuit should be applied to defendants' situation in this case. Therefore, whatever defendants' testimony tends to prove as to the equitable defense will be taken as proved, and as the fact.

Therefore, the consideration now before us is whether the citizens' meeting, and the taking up and transfer of lots, and all the other facts detailed, constitute an equitable defense to this action of ejectment. This contention, like the first point considered in this case, we are of opinion is at rest in this state.

(*Talbott* v. *King*, 6 Mont. 76.)   We quote from that case as follows:

"Matter is alleged in the answer as an estoppel, and on the trial the defendants sought to prove that the former owners of the Smokehouse claim, and while so the owners thereof, and knowing that the said claim would be in the proposed bound- aries of the townsite of Butte, joined others in petitioning the probate judge to enter said townsite for a patent, and in accordance therewith the town site was patented, and the own- ers of the Smokehouse claim accepted from the probate judge deeds to lots on said claim; and that these owners declared that they would not interpose or assert their title to this min- ing claim, or any rights thereunder, as against the townsite patent, or those claiming under the same.   This testimony was rejected, and error assigned accordingly.

"All these matters alleged as an estoppel took place and were in existence before the time that respondents made their appli- cation for a patent to the Smokehouse claim.   If they were estopped at all, they were estopped from applying for or receiving a patent.   Subsequent to these alleged acts and declarations, the owners of the Smokehouse claim took the necessary steps for procuring a patent thereto.   In order to do so, they filed their application, as the law required, in the proper land-office, showing acompliance with the laws, together with a plat and the field notes of their claim, made by and under the direction of the surveyor general of the United States for Montana, showing the boundaries of their claim, and they also, previously to the filing of the application, posted a copy of the plat, with a notice of their intended application, in a conspicuous place on the claim.   When such application was filed in the land-office, the register published a notice that such application had been made, for the period of sixty days, in a newspaper nearest to such claim; and also posted a notice in his office for the same period.   It is a conclusion from the issuing of the patent that all these requirements were complied with in making their application.   (*Steel* v. *Smelting Co.*, 106 U. S. 447.)

"The object of this exceeding care and publicity in applying for a patent for a mining claim is to give notice to any and all

adverse claimants that such application has been made, in order to give them an opportunity to contest in the manner provided by law, and before a court of competent jurisdiction, the applicant's right to a patent for the ground he claims. The conclusiveness of the title by patent grows out of the fact that this opportunity has been given to all adverse claimants to contest the right of the patentee. The theory of the law is that, unless the adverse claimant sets up his title, and controverts the right of the applicant for a patent during the period prescribed for this purpose, he thereby loses his right or title, whatever it may be, and cannot thereafter assert the same. Therefore, if the respondents were not entitled to a patent for the Smokehouse claim, for the reason that they were estopped from applying for and demanding the same, an adverse claim by appellants would have made this fact to appear, and defeated their application."

There is a parallel between the facts offered as a defense in *Talbott* v. *King*, 6 Mont. 76, and the facts so offered in the case at bar, except that in *Talbott* v. *King* it would seem that a much stronger showing was offered by defendants than was shown in the case at bar. Here it is claimed that the mine-owners devoted and donated the surface of the Keegan claim to townsite purposes, by reason of the fact that one of them attended and participated in the citizens' meeting described above. In *Talbott* v. *King*, 6 Mont. 76, the mine-owners petitioned the probate judge, an officer recognized by the laws of the United States as the proper one for such purpose, to enter as a townsite the surface ground of their mining claim, and they thus helped to set in motion the governmental machinery which finally turned out a United States patent for the townsite.

The result of the action of the citizens of Neihart, including the mine owners, was not to obtain any United States title to a townsite, but simply to create a recording office, in which persons could, as it was said, "take up" town lots. On the other hand, the result of the action of the citizens of Butte, including mine-owners, was the issuance of a United States patent. The owners of the Keegan claim "took up" two town lots, in pursuance to the proceedings of the citizens' meeting.

The owners of the Smokehouse claim of Butte accepted deeds from the probate judge for lots granted by the townsite patent from the government. The owners of the Keegan claim participated in the citizens' meeting described, which purported to devote the surface of mining claims to townsite purposes. The owners of the Smokehouse claim petitioned a public officer to apply for a townsite patent, and declared that they would not interpose or assert their title to this mining claim, or any rights thereunder, as against the townsite patented or those claiming the same.

It is said in *Talbott* v. *King*, 6 Mont. 76, that all the matters set up took place and were in existence before the time that the Smokehouse claimants applied for their mining title· Such is true also as to the Keegan claim herein. It is said of *Talbott* v. *King*, 6 Mont. 76, if the Smokehouse claimants were estopped at all, they were estopped from applying for, or from receiving, a patent. Such would also be true as to the Keegan claimants.

We need not compare any further the facts in the Smokehouse case and those in the case at bar. We think it is perfectly apparent that the Smokehouse case decides the appellants' contention here adversely to them. If the facts offered in the Smokehouse case were held not to constitute a defense, then, *a fortiori*, the less forceful facts offered in the case at bar were not a defense, even when their truth is fully conceded.

The order denying a new trial and the judgment are affirmed.

*Affirmed.*

PEMBERTON, C. J., and HARWOOD, J: Without being understood as questioning the doctrine of *King* v. *Thomas*, 6 Mont. 409, we concur in the result.