HORST, RESPONDENT, *v.* SHEA, ET AL., APPELLANTS.

[No. 1,155.]

[Submitted October 17, 1899.   Decided December 13, 1899.]

*Mines and Mining—" Mining Claims "—Placer Ground— Adverse Possession—Actions—Statute of Limitations.*

Code of Civil Procedure 1895, Section 494 (Compiled Statutes 1887, First Division, Section 40), providing that no action for the recovery of mining claims, lode claims excepted, or for the recovery of possession thereof, shall be maintained, unless it appears that the plaintiff or his assigns was seized or possessed of such mining claims within one year before the commencement of such action, is not applicable to real estate patented as placer ground, and hence adverse possession of such land for one year after the issuance of the patent is not sufficient to devest the owner of title, and such adverse possession does not bar an action for its recovery.

*Appeal from District Court, Silver Bow County; John Lindsay, Judge.*

ACTION by Barbara Horst against Con. Shea and others. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendants appeal. Affirmed.

*Mr. J. L. Wines,* and *Mr. M. L. Wines,* for Appellants.

Whether a patented placer mining claim be called real estate or not, still respondent is estopped from denying the nature and characteristics of the ground embraced within the patent,

or the nature of the title, and will not be heard to say in an action in which she relies upon such patent that the ground ceases to be placer ground as soon as the patent was issued. This applies to the grantee named in the patent and to all subsequent owners in privity with such grantee. (Rawle on Covenants for Title, 4th Ed. pp. 388–389; 3d Ed. p. 407; *Gibson* v. *Chouteau*, 39 Mo. 536.) The plaintiff cannot claim title, and thereby protection under such title, and at the same time deny its availibility to her contestants. (*Robertson* v. *Pickrell*, 109 U. S. 608–617.)

The officers of the land department judicially determined, in the issuance of a patent in this case, that the mining ground embraced in such patent was placer ground, and this determination is conclusive in this action. *St. Louis Smelting & Refining Co.* v. *Kemp*, 104 U. S. 636, and in this case a mining claim is defined to be "a parcel of land containing precious metals in its soil or rock." Our contention is that this action is barred by the provisions of the statutes and codes, by reason of the fact that the ground in controversy is, and was, a placer mining claim, and that more than one year had elapsed after the issuance of the patent, and before the commencement of this action, during all of which time appellants were in the actual, open, notorious, exclusive and adverse possession, by improvement and enclosure, and by claiming to be the owners thereof, as against all the world, including the government of the United States. Courts of eminent ability, and after an exhaustive examination of this question, have directly decided in favor of our contention. Without deciding the question now before the Court, this Court has upheld the one year statute of limitations by holding that the general law of limitations of actions for the recovery of real estate does not apply to placer mines and quartz lodes in construing Chapter 80, Laws of 1877. (*Davis* v. *Clark*, 2 Mont. 310.) We next desire to call the attention of the Court to a decision by the Supreme Court of the State of Nevada, that of *Southend Mining Co.* v. *Tinney*, 35 Pac. Rep. 89, 93-94.) It will be found upon page 93, above cited, that the statute of limitations in

the state of Nevada, having relation to mining claims or mining ground, was identical with the Montana statutes now under examination, except that the period was two years instead of one. In that case the mining claim in controversy was a patented claim, and the same contention was urged as is being urged in the case now before the Court. What the Supreme Court of Nevada says in that case touching the definition of the word "seized or possessed" is applicable to the statute now under examination, as the same words are used in the Montana statute. Under the old definition of the words "seized or possessed," these words usually applied only to a title in fee, and not to a mere possession. "Seized" or "possessed" of the fee was the form of expression generally used, and such words were usually supposed to exclude everything less than a fee simple title. In the state of California, the same as in Montana, they have a statute giving a materialman, who furnishes material or performs work or labor upon any mining claim, a lien for such materials or labor. In a case decided by the Supreme Court of California, the very ridiculous position was taken that a party furnishing materials for, or labor upon, a mining claim, could not avail himself of the statute unless such mining claim was unpatented. (*Bewick* v. *Muir*, 83 Cal. 368–372.) If an argument can be based upon the fact that the Legislature of the State of Montana has more than once used the expression "mining claim," giving such expression the same definition for which we contend, then such argument can be found in Sections 524 and 2130 of the Code of Civil Procedure. If the contention should be made that the term "mining claim," as used in those two sections, would exclude patented claims, it would not be considered tenable for one moment by this Court. The same contention is equally untenable when made in the case now under examination.

*Mr. F. T. McBride*, for Respondent.

**MR. JUSTICE PIGOTT** delivered the opinion of the Court.

This action was brought to recover the possession of a parcel of land lying in the county of Silver Bow. From a judgment in favor of the plaintiff, and from an order denying a new trial, the defendants have appealed. The admitted facts are these: On the 10th day of January, 1891, the United States, by patent of that day, granted to one John Noyes and one Elmira Noyes certain placer mining ground, including the land in controversy, the title to which became vested by *mesne* conveyances in the plaintiff. For 3½ years next before the commencement of the action,—January 7, 1896,—the defendants held adverse possession of the land for the purpose only of residence thereon. Chapter II of Title III of the First Division of the Compiled Statutes of 1887 prescribed five years', and Chapter II of Title II of Part II of the Code of Civil Procedure prescribes ten years', adverse possession of real property as necessary to defeat an action brought to recover it; and, since less than five years of adverse possession has been shown, the defendants do not now, although they did in the district court, urge in defense the statute of limitations of either five or ten years applicable to real property in general. They insist, however, that their adverse possession for one year after the issuance of the patent is sufficient to devest the plaintiff of, and invest them with, the title to the land in dispute. Counsel argue that Section 40 of the First Division of the Compiled Statutes of 1887, and Section 494 of the Code of Civil Procedure of 1895, which are in terms identical, are applicable to real estate patented as placer ground. If this be true the judgment is erroneous, and the court erred in refusing to grant a new trial. The plaintiff contends that the sections last cited treat of unpatented placer mining claims, and have no reference to the adverse possession of such land after the legal title thereto has passed from the United States. The single ultimate question, therefore, is: Does the adverse possession of real property for one year after it has been patented as placer ground bar the maintenance of an action for its recovery? The question in another form is: Do the words "mining claims," in sections 40 and 494, include lands patented as placer ground?

Sections 486 and 494 of the Code of Civil Procedure are as follows:

"Section 486.  In every action for the recovery of real property, or the possession thereof, the person establishing a legal title to the property is presumed to have been possessed thereof, within the time required by law, and the occupation of the property by any other person is deemed to have been under and in subordination to the legal title, unless it appear that the property has been held and possessed adversely to such legal title, for ten years before the commencement of the action."

"Section 494.  No action for the recovery of mining claims (lode claims excepted), or for the recovery of possession thereof, shall be maintained, unless it appears that the plaintiff or his assigns was seized or possessed of such mining claims within one year before the commencement of such action."

Aside from the change in section 2 hereinafter mentioned, which was wrought for a time by an act approved on January 11, 1872, these sections have been part of the statute law of the territory and state of Montana since the 9th day of February, 1865, when "An Act concerning Limitations" was approved; in that act they appear as sections 3 and 2, respectively, and are found on page 466 of the Bannack Statutes. Section 2 has, with the exception noted, been continually in force, by revisions, compilations, codifications and re-enactments, from the day it became a law until the present time, and is found incorporated in the Compiled Statutes of 1887, as Section 40 of the First Division, and in the Code of Civil Procedure of 1895 as Section 494.  Section 4 of the act of 1865 has likewise been continued in effect from the 9th day of February, 1865, the only difference being in the time required to rebut the presumption attending the legal title; it is Section 32 of the First Division of the Compiled Statutes of 1887, and Section 486 of the Code of Civil Procedure of 1895.

Until the 26th day of July, 1866, persons exploring the public domain, and removing minerals therefrom, were, technically, trespassers.  By the terms of an act approved on that

day (14 Statutes at Large, Chapter CCLXII, page 251) congress declared the mineral lands of the public domain to be free to exploration and occupation, subject to such regulations as might be prescribed by law, and to such customs and rules of miners as might not conflict with the federal laws. The act also limited the extent of lode claims, and provided that the title to lode mines might be acquired. But not until the act of July 9, 1870 (16 Statutes at Large, Chapter CCXXXV, page 217; Revised Statutes, Secs. 2329–2331), did congress define the maximum area of placer claims, or permit locators to obtain patents for them. Intermediate the act of July 26, 1866, and the act of July 9, 1870, placer locations, if made in conformity with local rules and customs, were valid, whatever their form or area; by the act of 1866, the government granted a privilege and license for the exploration and occupation of its placer lands, but they could not be patented. As has been remarked, prior to July 26, 1866, federal legislation was silent on the subject of public mineral lands in the territory of Montana. At the time, therefore, that Section 2, *supra*, now Section 494 of the Code of Civil Procedure, was passed—February 9, 1865—it was not possible to obtain the legal title to placer mining claims, for they were not patentable as such until the act of July 9, 1870, became operative; hence it is manifest that the first legislative assembly carefully distinguished between property held as an unpatented placer claim and land to which the legal title had been secured from the United States, prescribing that adverse possession for one year of a placer mining claim should bar an action for its recovery, whereas three years of such possession was declared necessary to devest the beneficial ownership of, or the legal title to, other real property. The reasons for the enactment of section 2 may be only surmised. As has been already observed, there was not, anterior to July 9, 1870, any provision of the federal law limiting the area of placer claims, and examination of the Session Laws of Montana, fails to disclose any statute prescribing their size,—by the act of 1866 the matter seems to have been confided for

regulation entirely to the varying customs of mining districts, and prior thereto congress had failed to recognize any right or privilege whatever with respect to the occupation or exploration of the public mineral lands. Although the first legislative assembly, by sections 3 and 6 of an "Act relating to the discovery of gold and silver quartz leads, lodes or ledges, and of the manner of their location," approved on December 26, 1864, found on pages 327 and 328 of the Bannack Statutes, restricted the area of "claims on lodes" to not more than 200 feet along the lode, with 50 feet on each side for working purposes, and required the "notice of the discovery or pre-emption upon any lead, lode or ledge" to be filed for record in the office of the county recorder within 15 days after discovery or pre-emption, yet the act of March 5, 1883, was the first statute which even went so far as to authorize the recordation of declaratory statements of placer locations (Laws of 1883, p. 95; see *Moxon* v. *Wilkinson*, 2 Mont. 421, 424.) Under the circumstances existing in 1865, it may not be unreasonable to assume that the purpose of the first legislative assembly in enacting section 2 was, as expressed in the dissenting opinion in *South End Mining Co.* v. *Tinney*, 22 Nev. 67, 35 Pac. 106, to prevent the holding of large tracts of the public mineral lands "without any title but that of the right of possession, and without working the same for an unreasonable length of time." At the time section 2 was enacted, and until the act of congress of July 9, 1870, a placer claim in Montana might embrace, unless prohibited by some rule or custom of the mining district, as much of the public domain as the locator could occupy; the right to continue in possession was not dependent upon the performance of any labor on, or exploration of, the claim. It is not unlikely that section 2 was designed to lessen or check abuses which might be practiced under the conditions existing in 1865, tending to retard the mineral resources of the territory. What the particular reason or motive was which caused the first legislative assembly to except placer mining claims from the supposed operation of the three years' period of limita-

tion, and to prescribe as applicable to them, and to them only, the period of one year, is not of importance, since the legis-lative intent so to do is unmistakable.    Whether, under the decisions and intimations in *Davis* v. *Clark,* 2 Mont. 310; *King* v. *Thomas,* 6 Mont. 410, 12 Pac. 865; *Weibold* v. *Davis,* 7 Mont. 107, 14 Pac. 865; *Mayer* v. *Carothers,* 14 Mont. 274, 36 Pac. 182; *Mining Co.* v. *Taylor,* 100 U. S. 37, 25 L. Ed. 541; *Belk* v. *Meagher,* 104 U. S. 279, 26 L. Ed. 735, and *Redfield* v. *Parks,* 132 U. S. 239, 10 Sup. Ct. 83, 33 L. Ed. 327,—the provisions of the section are enforceable, we do not decide.    That question is not presented in this case.

The first re-enactment of sections 2 and 4 of the act of February 9, 1865, was the one of January 12, 1872, con-tained in sections 2 and 4 of Chapter XLI of "An act revis-ing, re-enacting and codifying the general and permanent laws of Montana territory," and found on page 515 of the Codified Statutes of 1871–72.    The codification made no change in the sections as originally passed; even the numbering was re-tained.    It repealed all acts and parts of acts revised or re-enacted therein, and all acts or parts of acts repugnant to its provisions; and declared that its provisions, so far as they were the same as those of existing laws, should be interpreted as continuations of such laws, and not as new enactments.    But on January 11, 1872, an act, appearing on pages 591 and 592 of the Laws of 1871–72, was approved, amending the act of February 9, 1865, by changing section 2 of the earlier act so that one year's adverse possession of unpatented lode, as well as placer, claims, operated as a bar to recovery.    It expressly provided that the period of one year's adverse possession should not apply to placer mines or quartz lodes held under patent from the United States, but that sections 3, 4, 5, 6 and 7 of the act of February 9, 1865, prescribing the three years' statute of limitations as a bar to the recovery of "real prop-erty," should apply to them.    It will be observed that the amendatory act was approved on January 11, while the act re-enacting sections 2 and 4 was approved on January 12, 1872.    In view of the repealing clause referred to, it may be

that the act of January 12th, being the later expression of the
legislative will, annulled so much of the act of January 11th
as prescribed against actions to recover unpatented lode claims
the bar of one year's adverse possession, although in *Davis* v.
*Clark, supra*, the contrary seems to have been taken for
granted or assumed without discussion of the act of January
12th; whether or not such was its effect we need not decide,
for section 674 of an act approved on February 16, 1877,
found at page 215 of the Laws of 1877, did repeal the acts of
January 11th and 12th, and at the same time re-enacted sec-
tions 2 and 4 of the act of 1865 as sections 40 and 32 of the
new statute.

The defendants contend that while the legislative assembly,
by the act of January 11, 1872, prohibited the application of
the term "mining claims" to patented claims, yet by the re-
peal of that act, and the omission ever afterwards expressly
to exclude patented claims from the operation of the statute
prescribing one year's adverse possession of placer mining
claims as a bar, the lawmaking power intended to include pat-
ented claims within the term "mining claims," and that there-
fore Section 40 of the First Division of the Compiled Statutes
of 1887, and Section 494 of the Code of Civil Procedure of
1895, apply to both patented and unpatented placers, notwith-
standing the fact that these sections are copies of section 2 of
the act of 1865, which was passed before patents to any kind
of mining claims could be issued. In our opinion, the posi-
tion is untenable.

It is plain that the amendment of January 11, 1872, for-
mally excluding patented placer claims from the operation of
section 2 of the act of 1865, was wholly unnecessary; for such
claims were never within the intent and meaning of the stat-
ute, and could not have been in contemplation when the sec-
tion was first enacted; the amendment in this respect made no
change whatever in section 2. The primary purpose of the
amendment was to subject actions to recover unpatented lode
claims to the bar of the statute of limitations prescribed for
similar actions concerning unpatented placer claims, and thus

place both species of claims on an equal footing with respect to the effect of adverse possession. Before the amendment, actions for lode claims not patented were barred, if barred at all, by the three years' adverse possession applicable to real property held under legal title. The legislative assembly probably entertained the fear that, by amending section 2 so as to make its provisions applicable to lode claims, without express negation by apt language of the design to include those held under patent, the section might be susceptible of an interpretation by which actions to recover patented lodes, as well as those not patented, would be deemed within its purview. Had this section been amended so as expressly to prescribe the period of one year's adverse possession as sufficient to bar actions for placer claims and *unpatented* lode claims, a doubt, at the least, would arise with respect to the inference or presumption deducible from the employment of the word "unpatented" to qualify lode claims, coupled with the omission to use that word in connection with placer claims; it would be argued, and the argument would be not without force, that the presence of the word in the one instance, and its absence in the other, was significant of an intention to include all placer claims, both patented and unpatented.

We think section 2 of the act of 1865, as re-enacted in sections 40 and 494, *supra,* must receive the same interpretation now that it did when originally passed; it should not, by construction, be held to include within the phase "mining claims" real property patented as a placer mining claim. Each re-enactment of section 2 was a mere continuance, not a repeal, of its provisions; and there is nothing in the repeal of the act of January 11, 1872, or elsewhere, which is sufficient to raise the presumption that the legislative assembly ever intended to embrace within the words "mining claims" in section 2 any placer claims other than those held by a mere possessory title.

Another consideration furnishes a potent reason in support of our conclusion. Placer mines are, as a rule, of short life. They are soon exhausted. When the deposits which consti-

tute the only value of placer claims as mines have been extracted or removed, or when it becomes unprofitable to work them, the land is not infrequently devoted to other purposes. It is a matter of common knowledge that many tracts or pieces of land which were originally patented as placer claims, having lost commercial value as mines, are occupied for the purposes of trade, business and residence,—indeed, in the case at bar, the possession of the defendants was for the purpose last named, and for that alone. Every patented placer claim eventually loses its distinctive character, and becomes assimilated in all respects to other real property. If the position of the defendants be correct, a city lot, once a placer claim, and patented as such a score of years ago, now owned by a remote grantee of the person who acquired title from the government, would be comprehended by the provisions of Section 494 of the Code of Civil Procedure of 1895, and adverse possession of the lot for one year by a stranger would bar an action for its recovery, as well as invest the disseisor with title as against the late owner, although as to all other real estate, namely, real estate not patented as placer claims, ten years of adverse possession is necessary to produce the effect accomplished by one year's adverse possession of the lot held under a placer patent. The statute does not warrant such a construction. Without a clear expression of the legislative will requiring the interpretation for which defendants contend, the presumption that the statute was intended to bring about or permit results so unreasonable and unjust may not be indulged.

The judgment and the order appealed from are correct Each is therefore affirmed.

*Affirmed.*